OPINION OF THE COURT
Alan D. Oshrin, J.
In this action the plaintiff seeks damages stemming from an alleged failure to provide the plaintiffs decedent with protection after the Police Department had been directly notified that the decedent’s husband had violated an order of protection. The incident occurred on September 15, 1985. The matter has been the subject of extensive litigation and in December 1997 the Court of Appeals determined that a special relationship existed between the municipality and the injured party and, therefore, that the plaintiff had a viable claim (91 NY2d 198 [1997]).
This court has supervised discovery and has scheduled the matter for trial during February 2000. At a pretrial conference conducted on December 22, 1999 the plaintiff sought leave to amend the complaint “to further amplify plaintiffs allegations as to the inapplicability of Article 16.” The plaintiffs letter dated December 22, 1999 has been treated by this court as a notice of motion. The defendant opposed the application by letter dated December 30, 1999.
The proposed pleading is dated December 21, 1999. The plaintiff now alleges at both paragraphs 14 and 18 that “the defendant’s claim for limited liability pursuant to CPLR 1601 is not applicable because this action falls within three exemptions of CPLR 1602 contained in subsections 4 [should be (2) (iv)], 7 and 11.” The proposed pleading provides as follows:
“a) The defendants’ liability arises herein by reason of the failure to enforce a non-delegable duty to protect the decedent, Adell Parker Swiggett, from her assailant-husband, Anthony Swiggett, pursuant to the Order of Protection which was is *127 sued, to Adell Parker Swiggett, which was in full force and effect when it was shown to the Police Officers at the time she requested their aide [sic] in enforcing the said Order of Protection. (CPLR Section 1602(2-iv)); and
“b) The defendants’ liability also arises by reason of the Police Officers, and the Suffolk County Police Department, having acted with reckless disregard for the safety of Adell Parker Swiggett in not enforcing the Order of Protection against Anthony Swiggett and by not arresting him and removing him from the area of residence of Adell Parker Swiggett, i.e., 39 Pine Street, Central Islip, New York prior to his murdering her (CPLR Section 1602(7)); and
“c) The defendants’ liability also arises by reason of the investigating Police Officer and/or Police Officers, knowingly believing that Anthony Swiggett was in violation of the Order of Protection issued to the decedent, Adell Parker Swiggett, knowingly and intentionally failed and refused to arrest Anthony Swiggett and removed [sic] him from the area of decedent’s residence (CPLR Section 1602(11)).”
These exemptions are the nondelegable duty (CPLR 1602 [2] [iv]), reckless disregard (CPLR 1602 [7]) and knowingly or intentionally (CPLR 1602 [11]) exemptions to the limitation of liability to one’s proportionate share when such proportionate share is 50% or less. In support of the motion, the plaintiff relies upon the recent opinion of the Court of Appeals in Morales v County of Nassau (94 NY2d 218 [1999]). In Morales the Court of Appeals considered the consequence of the failure to plead the statutory exemptions to article 16. In Morales the plaintiff had pulled her car alongside an area where Nassau County police officers were investigating an accident, jumped out of the vehicle and sought help claiming that her husband who had hidden himself in her vehicle and threatened her with a knife had violated an order of protection. The police removed the husband from the vehicle, permitted the wife to drive away, but did not arrest the husband. Early the next morning, the husband attacked the wife in her driveway with a machete inflicting serious injuries.
In Morales (supra), at the precharge conference, the defendant County requested a charge to the jury that liability could be apportioned between itself and the husband. The Trial Judge declined to instruct the jury that it could apportion liability, finding the existence of a strong public policy for the issuance and enforcement of orders of protection and in addressing situations of domestic violence (Morales v County of Nassau, *128 175 Misc 2d 35 [1997]). On appeal the Appellate Division held that the “nondelegable duty” exemption did not apply to the facts of the case and that the trial court erred in refusing to issue an apportionment charge (256 AD2d 608 [1998]). On further appeal to the Court of Appeals, Judge Ciparick, writing for the Court, noted that the plaintiff did not plead the intentional tort or nondelegable duty exception, nor did plaintiff move to amend her pleadings until the matter was submitted to the Court of Appeals. Judge Ciparick acknowledged that leave to amend pleadings is liberally granted, but observed that as the Court of Appeals stated in Cole v Mandell Food Stores (93 NY2d 34, 40 [1999]), “‘a defendant potentially subject to the weight of full judgment must have appropriate notice [of why article 16 might not apply] provided by pleadings.’” (Morales v County of Nassau, 94 NY2d, at 223.) Judge Ciparick further wrote that “[h]aving failed to plead the exemptions in her original complaint, once the County requested an apportionment charge, plaintiff should have moved to amend her pleading to include any possible article 16 exemptions. Plaintiff did not do so then or at any time prior to the presentation of the appeal to this Court.” (Supra, at 224.)
Inasmuch as the courts have generally permitted plaintiffs to amend the pleadings at various points throughout an action in order to comply with CPLR 1603 (see, Cole v Mandell Food Stores, 93 NY2d 34, supra) and Judge Ciparick has suggésted that such an application could be made during a jury charge conference, the court finds that the plaintiff’s application to amend the complaint is not untimely. In addition to opposing the motion on the ground of timeliness, the County argues that the nondelegable duty exemption does not apply (citing the Appellate Division’s ruling in Morales v County of Nassau, 256 AD2d 608 [1998], supra); that if the court should permit the amendment, that the court should limit the exemptions to the exemptions contained therein; and that it is entitled to a verified bill of particulars as to the claimed exemptions to article 16.
The court will now address the merits of the proposed amendment. As to the nondelegable duty exemption, the Appellate Division in Morales (supra), as noted above, held that the law does not impose upon police officers a “nondelegable duty” to arrest, within the meaning of CPLR 1602 (2) (iv), in every case where the police officers might have the authority to arrest. The Court then found that the “nondelegable duty” exemption does not apply to the facts of this case and that the trial court *129 erred in refusing to issue an apportionment charge (Morales v County of Nassau, 256 AD2d 608, supra). The pertinent facts of Morales were set forth above.
In the case at bar, the Family Court issued a permanent order of protection against Anthony Swiggett on June 12, 1985. Less than two weeks after it was issued, on June 24th, Mr. Swiggett was arrested for violating the order of protection. On the date of the subject incident, September 5, 1985, at approximately 9:06 p.m., Suffolk County police officers responded to a 911 call from the decedent that her husband had violated the order of protection by entering her residence and throwing her furniture out into the yard. The officers met the decedent at her mother’s house where she accompanied the officers to her house located nearby. Upon arriving at the decedent’s residence, the officers noted several pieces of furniture strewn about the lawn including some chairs, a couch, and a washing machine. The officers were presented with the order of protection by the decedent. The officers described the decedent as “very upset” and she stated that she wanted her husband “locked up.”
The officers learned that the husband was visiting the decedent’s next door neighbors located some 20 to 30 feet away from the decedent’s residence. When the officers requested that the husband come outside to speak with them, they smelled alcohol on his breath but did not find him intoxicated. Upon questioning, the husband denied entering his wife’s residence and removing the furniture. The officers questioned everyone present but no one, including the decedent, had actually seen who had moved the furniture.
The officers learned that there were no outstanding warrants for the husband’s arrest. The officers were unsure of how to proceed and called their supervisor for guidance. The supervising officer was asked whether it was necessary to see the subject within the premises on an order of protection. The supervisor responded that “for you to arrest him he has to be there at the scene of his action.” The officers then asked, “so you can’t just do it on her say so that he was in the house prior?” The supervisor answered “Negative * * * It’s not like a warrant. He has to be there and * * * otherwise her complaint should be for the court * * * and you make a Field Report.”
Based upon this advice, the officers told the decedent that “according to the information [they] had, there was no justification to arrest him on the violation of the Order of Protection.” One officer claimed that the decedent “began crying and plead *130 ing that we arrest him” and told the officer that she was “afraid of this man.” The officer told the husband “that I believed what [the wife] had told me, and * * * if I had to come back here again tonight, if there were any further problems, that he would be arrested and taken to. jail.”
The officers remained on the scene for more than an hour and watched while the wife moved her furniture back into her house. The officers did not enter the house itself or do any further investigation to ascertain who had moved the furniture. At approximately 10:25 p.m., ,the officers investigated an unrelated missing juvenile report they had received from a residence located across the street from the decedent’s home. After investigating this report, the officers left the area for a meal break at around 10:46 p.m. At the time the officers left, they did not know where the husband was.
At 10:54 p.m., the officers received a call to return to the area. The decedent had been stabbed. The same officers who had investigated the wife’s earlier report then canvassed the area looking for the husband. When they found him, he was covered in blood and his pocket contained a copy of the same order of protection which the officers had seen earlier. The wife died from her wounds and a jury later convicted the husband for the stabbing of his wife.
Given the close proximity of distance of Mr. Swiggett to the decedent’s residence on the date of the occurrence (20 to 30 feet); the close proximity of time between the police officers leaving the scene of the 911 call and the stabbing of the decedent (less than 30 minutes); the detection by the police officers of alcohol on the breath of Mr. Swiggett when interviewed; the direct and immediate contact between the police officers and the decedent concerning a possible violation of the order of protection; and the police department’s separate and verifiable knowledge of the husband’s violent history through his prior convictions and arrests — which included an arrest a few months earlier for violating the same order of protection— this court cannot find, as a matter of law, at the pleading stage, that the nondelegable duty, reckless disregard and knowingly and intentionally exemptions to article 16 cannot be said to apply. A party asserting an exemption to article 16 has the affirmative obligation of pleading and proving that exemption by a preponderance of the evidence (see, Cole v Mandell Food Stores, 93 NY2d 34, supra; CPLR 1603). The plaintiff, at the time of trial, will be expected to produce such evidence as to meet this burden as to each claimed exemption (CPLR 1602 [2] [iv]; [7], [11]).
*131 The defendant has requested that the court limit the exemptions to be asserted by the plaintiff to the three exemptions contained in the amended verified complaint. A defendant potentially subject to the weight of a full judgment must have appropriate notice provided by pleading, so as to prevent prejudice to the defendant by the inability to prepare a defense to the plaintiffs allegations (see, Cole v Mandell Food Stores, 93 NY2d 34, supra). As such, it would be appropriate for the plaintiff to assert any and all exemptions to article 16, prior to the trial. Accordingly, in the event that the plaintiff intends to assert any additional exemptions to article 16, he should do so by the time of service of the verified bill of particulars directed herein but, in no event, later than the commencement of trial.
The defendant has requested a verified bill of particulars as to the claimed exemptions to article 16. The defendant is entitled to such a bill. Accordingly, the defendant shall serve a demand and the plaintiff shall serve a verified bill of particulars as directed herein.