595 So.2d 353 (1992)
Vernisa MACK, et al., Appellants,
v.
The CITY OF MONROE, et al., Appellee.
No. 23288-CA.
Court of Appeal of Louisiana, Second Circuit.
February 26, 1992.
Writ Denied May 22, 1992.
*354 Guerriero & Guerriero by Jeffrey D. Guerriero, for appellants.
Nanci S. Summersgill, Asst. City Atty., for appellee.
Before SEXTON, VICTORY and STEWART, JJ.
VICTORY, Judge.
In this tort suit to recover for personal injuries and related damages, plaintiffs appeal the summary judgment granted in favor of the City of Monroe. We affirm.

FACTS
On January 29, 1989, Vernisa Mack (Mack) and defendant, James Charles McGraw (McGraw), her former live-in boyfriend and the father of her three children, had an altercation at Mack's home in Monroe over Ernest Richards, a man Mack had begun to date. McGraw and Mack had lived together for several years until about October, 1988. Shortly after the fight and McGraw's departure, Mack realized she had been cut and was taken to the hospital for stitches. The next day Mack went to the Monroe police and, at their instructions, signed an affidavit for a peace bond and an arrest warrant for McGraw on a charge of aggravated battery. Mack supplied the Monroe police with McGraw's place of employment and home address. However, McGraw was not arrested until after the February 11, 1989 incident related below.
On February 11, 1989, McGraw called Mack's home and asked if he could take their children to the movies. Mack gave permission for the children to accompany McGraw because the children were close to him, but Mack required McGraw's brother pick the children up at her home. Later in the day, Frankie Richards, who lived with and apparently was a relative of Ernest Richards, Mack's boyfriend, telephoned Mack and stated that McGraw was at the *355 Richards' home in West Monroe with the children and wanted Mack to come pick them up. Mack, concerned for her children and obviously afraid of McGraw, requested Brendi Chatman, (her sister who dated Frankie Richards), Rita Mack (her sister), and Jennifer Mack (her sister-in-law), to accompany her to West Monroe. She did not seek assistance from law enforcement officials.
Shortly after they arrived by car at the Richards' home in West Monroe, McGraw's van pulled up. McGraw exited his van and began walking towards their car, saying something about the baby being sick. Brendi Chatman got out of the car and starting walking towards the van saying "we just come after the kids." McGraw then turned back towards the van, telling Chatman he would get the children out of the van and give them to her. Brendi Chatman then apparently attempted to get the children from the van and was shot by McGraw. As Mack attempted to approach Chatman, McGraw hit her with the butt of the gun. Thereafter, the sequence of events is not clear, but McGraw apparently shot Mack, Jennifer Mack, and attempted to, or actually did, run over some or all of the wounded ladies with his van. Each received serious injuries for which recovery is sought in this lawsuit.
The injured ladies filed suit, along with Freggie Mack, husband of Jennifer Mack, who claimed loss of consortium. In addition to their own injuries, the women sued for loss of consortium on behalf of their minor children. Named as defendants were the City of Monroe, James Charles McGraw, and XYZ Insurance Company. Plaintiffs allege the city is responsible for their damages because of the failure to arrest McGraw prior to February 11, 1989.
The city moved for summary judgment. The trial judge found no legal causation between the failure to arrest McGraw on the battery warrant and/or the peace bond and the actions of McGraw, and therefore granted summary judgment in favor of the city. From this judgment, plaintiffs appeal.
Plaintiffs argue on appeal that the police, having been told of McGraw's actions of January 29, 1989, breached a duty to protect them by failing to obtain and/or execute a peace bond warrant and/or arrest warrant. They claim the risk of harm by McGraw fell within the scope of the duty owed them by the police department, that the issue of causation is one of fact which is disputed, and that the trial court erred in rendering summary judgment in favor of the city.

DISCUSSION
The law is well settled that a motion for summary judgment should be granted if, and only if, the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and the mover is entitled to judgment as a matter of law. The burden of proof in a motion for summary judgment is on the mover to establish there are no genuine issues of material fact. Only when reasonable minds must inevitably concur is a summary judgment warranted and any doubt should be resolved in favor of a trial on the merits.
Weighing evidence and making evaluations of credibility are not included in a determination of summary judgment. All inferences drawn from underlying facts contained in the materials before the court must be viewed in the light most favorable to the party opposing the motion for summary judgment. Smith v. American Universal Ins. Co., 522 So.2d 1366 (La.App.2d Cir.1988).
As we recently stated in Nichols v. Nichols, 556 So.2d 876, 878 (La.App.2d Cir. 1990), writ not considered, 561 So.2d 92 (La.1990):
A defendant's conduct is actionable under the duty/risk analysis of LSA-C.C. Art. 2315 where it is both a cause-in-fact of the injury and a legal cause of the harm incurred. Sinitiere v. Lavergne, 391 So.2d 821 (La.1980); Fowler v. State Farm Fire and Casualty Insurance Co., 485 So.2d 168 (La.App.2d Cir.1986), writ denied 487 So.2d 441 (La.1986). The *356 cause-in-fact test requires that "but for" the defendant's conduct, the injuries would not have been sustained. The legal causation test requires that there be a "substantial relationship" between the conduct complained of and the harm incurred. Sinitiere v. Lavergne, supra; Fowler v. State Farm Fire and Casualty Insurance Co., supra.

The initial inquiry is into the scope of the defendant's duty to the plaintiff. The duty of a public official in general and a police officer in particular is well summarized in Kendrick v. City of Lake Charles, 500 So.2d 866, 870 (La.App. 1st Cir.1986), as follows:
"[T]he mere fact that a duty is of a public nature, and benefits the general public, does not require a conclusion that the city cannot be found liable for the breach of that duty." Stewart v. Schmieder, 386 So.2d 1351, 1358 (La. 1980). The duties of members of a city police department relate to its governmental function of maintaining public order. Tezeno v. Maryland Casualty Co., 166 So.2d 351 (La.App.3d Cir. 1964). When a public official breaches a duty which is owed to the public in general, such breach of duty generally does not result in liability to an individual. However, where a personal or individual relationship (one-to-one relationship) arises between the police officer and an individual, liability may be imposed for breach of a duty owed by the police officer to the individual. Serpas v. Margiotta, 59 So.2d 492 (La. App.Orl.1952). A duty owed to the public in general may be transformed into a duty owed to an individual through closeness in proximity or time. Once the personal or individual relationship has been established, the police officer then becomes obligated to conduct himself in such a way as not to cause the individual unnecessary injury. Tompkins v. Kenner Police Department, 402 So.2d 276 (La.App. 4th Cir.1981).
Further, it has been stated that the police, along with a duty to maintain order and to enforce the law, have a duty to prevent crime and protect the citizenry. Tezeno v. Maryland Casualty Co., 166 So.2d 351 (La.App. 3d Cir.1964).
While we have no difficulty determining that the police department does not owe a legal duty to physically respond to every threat which a citizen reports to it, there must be some analysis made of each reported threat depending on the circumstances of the particular case ...
(Footnote omitted.)
We agree that there are contested issues of fact not susceptible to resolution by summary judgment on the duty owed to Vernisa Mack. However, the police owed no duty to, and are not liable for injuries to all other named plaintiffs because there was never a personal nor individual relationship between them and the police officer(s) who investigated the January 29th incident and received Mack's complaint on January 30, 1989. The trial judge correctly granted summary judgment in favor of the city for all plaintiffs except Vernisa Mack, individually and on behalf of her children.
We also agree with appellants that there are genuine issues of material fact remaining to be resolved with respect to the cause-in-fact of the harm to Vernisa Mack, i.e., "but for" the defendant's conduct, the injury would not have been sustained. The affidavits, depositions, and documents submitted in support of and in opposition to the motion for summary judgment seem to indicate arrest warrants for McGraw were issued on January 30, 1989 on the peace bond application and for aggravated battery. There are indications in the record to suggest the city attorney did not perceive the situation to be an emergency, and therefore, chose not to apprehend McGraw immediately. We are all familiar with the terrible overcrowding situation facing local and state jails.
We note that even if McGraw had been arrested on January 30th on the peace warrant, he was entitled to bail, which appears to have been set at $350.00. If he had refused to give the peace bond, he could not have been held for more than five days, and would have been released from jail long before February 11, 1989. LSA-C.Cr.P. *357 Art. 31. Further, if he had been arrested on January 30th on the warrant for aggravated battery, he would have been entitled to make bail, which was apparently set at $500.00. McGraw held a full time job, making it unlikely he still would have been incarcerated on the battery charge on February 11th. Although McGraw speculates in deposition that the events of February 11th would not have occurred had he been under a peace bond, we note he also stated he did not plan the events of February 11th, and they occurred on the "spur of the moment." Nevertheless, on this record we cannot say what would have happened had the Monroe police obtained and executed the arrest warrant and peace bond sought by Mack.
Although genuine issues of material fact exist, summary judgment is still available if the failure to act by the Monroe police was not a legal cause of the harm, i.e., if there was not a substantial relationship between the conduct complained of and the harm incurred. Nichols, supra; Fowler, supra.
In Nichols, supra, we addressed a somewhat similar situation. At the courthouse following domestic litigation, Mrs. Nichols, who no longer resided in the family home with Mr. Nichols, threatened to shoot her husband if he returned to the family home. Mr. Nichols, on advice of counsel, immediately went to the police station, reported the threat to the police chief and asked for an officer to accompany him home. However, the police chief merely advised him to go home and report back if there were problems. When he arrived home, Mr. Nichols saw his wife's car, but nonetheless attempted to unlock the door, and was shot with a shotgun through the door by his wife.
This court was unable to conclude on the record that Mrs. Nichols would not have shot her husband had an officer been present with Mr. Nichols as he tried to enter his home. Nevertheless, summary judgment was appropriate because the failure by the Minden police to act was not the legal cause of the harm. We found there was no substantial relationship between the conduct complained of and the harm that occurred:
[T]he conduct complained of [failure to send a police escort] is not the legal cause of the harm which this plaintiff suffered. In the instant case, upon arriving at the residence, plaintiff saw his wife's car and knew she was inside the residence where she was not presently living. He knew she had threatened him, yet he went to the door anyway. He had any number of other options including leaving and calling her on the phone and/or recontacting the police with this additional information. Instead, he elected to attempt to unlock the door, at which time Mrs. Nichols decided to shoot through the door. Under these circumstances, we conclude the relationship between the conduct complained of and the harm which occurred here is not sufficiently substantial for that conduct to be a legal cause of the harm.
Nichols, supra at 879.
In Fowler, supra, the plaintiff and others were accidentally locked outside a house on a second floor balcony when the defendant/homeowner inadvertently failed to release the push button knob on the doorlock. The defendant also did not have a key with her to open the door. The weather was perfect so there was no urgent need to get inside immediately, and people were standing nearby who might have assisted. Nevertheless, the plaintiff jumped off the balcony, breaking a leg and fracturing an ankle. Although recognizing that "but for" the defendant's conduct, the plaintiff's injuries would not have been sustained, we held there was no substantial relationship, or legal cause, between the defendant's conduct in failing to have a key and in failing to release the automatic lock on the door, and the harm incurred.
Here, we agree with the city that the failure to obtain and/or process warrants of arrest for McGraw was not the legal cause of the harm suffered by Vernisa Mack on February 11, 1989. Her statements in the record show: (1) she knew that on January 29th she had fought with McGraw over her new boyfriend and had *358 been cut by McGraw; (2) she recognized the danger to the extent that she went to the police on January 30, 1989 and sought an arrest warrant and peace bond; (3) she knew police had not arrested him by February 11, 1989; (4) when he called on February 11th to take their children to the movies, she refused to let him come to pick them up, obviously recognizing it might be dangerous for her to be around him; (5) when she was called shortly thereafter by Frankie Richards, who lived at the same home as her new boyfriend, over whom she and McGraw had fought on January 29th, she was made even more aware of the danger of placing herself in close contact with McGraw.
Following McGraw's phone call, Mack, acutely aware of the danger, had several options available to her. She could have called the Monroe and/or West Monroe police to accompany her to get her children, or even had them pick up the children and bring them to her. She could have sent her sisters and sister-in-law, or any of them, to get the children. She could have asked Frankie Richards, the caller, to secure the children from McGraw and keep them until they could be picked up at a time after McGraw departed. Instead, Mack chose to place herself in direct contact with McGraw by personally traveling to West Monroe. Unfortunately, McGraw, who according to his deposition did not plan the events of February 11th, apparently exploded when Brendi Chatman attempted to retrieve his children from the van. He stated, "It just happened on the spur of the moment, just quickly happened."

CONCLUSION
Under these circumstances, we conclude the relationship between the conduct complained of (the failure to arrest McGraw) and the harm which occurred to Mack is not sufficiently substantial for that conduct to be a legal cause of the harm. For these reasons, the judgment appealed from is affirmed at appellants' costs.
AFFIRMED.
STEWART, Judge dissenting.
In my view, this case presents a classic situation in which summary judgment is inappropriate. Though plaintiff followed the instructions given to her by police officers concerning the procuring of a peace bond, she is now denied her day in court to prove causation against the City of Monroe. The material issues related to the issuance vel non of the peace bond and their effect on the plaintiff's burden of proof can only be speculated about at this juncture. Such speculation concerning the outcome on the merits should not be the basis of granting a summary judgment. Swindle v. Haughton Wood Company, Inc., 458 So.2d 992 (La.App. 2d Cir.1984). The salient point is that the City of Monroe has not met the great burden required to justify a summary judgment at this stage of the proceedings.
For these reasons, I respectfully dissent.