Jason Paul DORE, Brandi Sue Dore, and Jamie Allan Dore [born Jamie Allan Wollard, and also known by that name], Appellants,

v.

The CITY OF FAIRBANKS, The Police Department of the City of Fairbanks, John Does I through XX, and The State of Alaska, Department Of Mental Health, Appellees.

No. S–9386.

Supreme Court of Alaska.

Sept. 28, 2001.

35. *Id.*

36. *Id.*

Arthur Lyle Robson, Fairbanks, for Appellants.

Paul J. Ewers, Deputy City Attorney, Fairbanks, for Appellees.

Before FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

## OPINION

CARPENETI, Justice.

## I. INTRODUCTION

On April 29, 1986, Jack Dore killed his wife Carmen Dore and then killed himself. Seven days earlier, the Fairbanks police had obtained a warrant for Jack Dore's arrest for harassing Carmen. More than ten years later, the Dore children, Jamie, Brandi, and Jason, brought this action against the city alleging negligence in protecting Carmen and failing to arrest Jack. The superior court granted summary judgment in favor of the city, concluding that: the statute of limitations barred Jamie's and Brandi's claims; the city owed no duty to Jason Dore; the city enjoyed statutory immunity from Jason Dore's tort claim; and the city did not breach its duty to Jason Dore, assuming a duty existed. Because the superior court did not err in granting summary judgment on the statute of limitations and duty issues, we affirm.

## II. FACTS AND PROCEEDINGS

Jamie, Brandi, and Jason Dore are the children of Carmen and Jack Dore. Jamie was born February 6, 1972. Brandi was born October 16, 1974. Jason was born January 5, 1978.

Sometime in late 1985, Jack and Carmen Dore separated. Jack made oral and written threats to kill Carmen, and he sought psychiatric treatment. Carmen obtained a civil protective order against Jack.

At Carmen's request, the Fairbanks authorities filed a criminal complaint, charging Jack Dore with harassment in violation of AS

11.61.120. Magistrate John C. Hessin issued an arrest warrant on April 22, 1986.

Seven days later, Jack Dore killed Carmen Dore and committed suicide.

In December 1987, and again in August 1996, counsel for the Dore children sent the City of Fairbanks notice of claim letters for the death of Carmen Dore. On October 16, 1996, Jamie, Brandi, and Jason filed this action against the City of Fairbanks. The Dore children claimed that the city negligently organized, trained, hired, managed, and controlled the police, failed to arrest Jack on the warrant, and failed to protect Carmen and them. The plaintiffs included the State of Alaska Department of Health and Social Services, Division of Mental Health and Development Disabilities as defendants in their complaint but later stipulated to dismissing with prejudice the claims against the state.

The City of Fairbanks moved for summary judgment to bar the claims of Jamie and Brandi Dore. In a Memorandum Decision and Order dated May 29, 1998, Superior Court Judge Mary E. Greene granted the motion and dismissed the claims of Jamie and Brandi Dore because they failed to file suit before their twentieth birthdays as required by AS 09.10.140(a) when the plaintiff is a minor at the time the cause of action accrues.

The City of Fairbanks later moved for summary judgment against Jason Dore on the remaining three issues: whether the city had a duty; whether the city had immunity; and, if the city had a duty, whether the city breached its duty. Superior Court Judge Charles R. Pengilly granted the city's motion without comment.

The Dore children appeal.

### III. STANDARD OF REVIEW

We review a grant of summary judgment *de novo*.[1] All reasonable factual inferences are drawn in favor of the non-moving party "to determine whether genuine issues of material fact exist and whether the moving party is entitled to judgment as a matter of law."[2] In reviewing questions of law, we apply our independent judgment and adopt "the rule of law that is most persuasive in light of precedent, reason, and policy."[3]

### IV. DISCUSSION

#### A. Jamie's and Brandi's Claims Are Barred By the Statute of Limitations.

The general statute of limitations for tort actions is two years from the date of accrual of the cause of action.[4] When the cause of action accrues while a person is under the age of majority or incompetent by mental illness or disability, the statute of limitations is tolled.[5] The person under disability must file his or her action within two years after the disability ceases or be barred by the statute of limitations.[6]

The claims of both Jamie and Brandi Dore are barred by the statute of limitations, AS 09.10.140(a). The cause of action accrued, if at all, on April 29, 1986, the date of Carmen Dore's murder. At that time, Jamie Dore was fourteen years old, and Brandi Dore was eleven years old; both were minors under Alaska law.[7] To avoid the statute of limitations, they had to file suit on or before

---

1. *See Brady v. State,* 965 P.2d 1, 8 (Alaska 1998).

2. *United Airlines, Inc. v. Good Taste, Inc.,* 982 P.2d 1259, 1262 (Alaska 1999) (citing *West v. City of St. Paul,* 936 P.2d 136, 138 (Alaska 1997)).

3. *State, Dep't of Transp. & Pub. Facilities v. Sanders,* 944 P.2d 453, 456 (Alaska 1997) (citing *Great Am. Ins. Co. v. Bar Club, Inc.,* 921 P.2d 626, 627 (Alaska 1996)).

4. *See* AS 09.10.070(a).

5. AS 09.10.140(a) provides in pertinent part:
   [I]f a person entitled to bring an action mentioned in this chapter is at the time the cause of action accrues either (1) under the age of majority, or (2) incompetent by reason of mental illness or mental disability, the time of a disability identified in (1) or (2) of this subsection is not a part of the time limit for the commencement of the action.... [T]he period within which the action may be brought is not extended in any case longer than two years after the disability ceases.

6. *See id.*

7. *See* AS 25.20.010 ("A person is considered to have arrived at majority at the age of 18....").

their twentieth birthdays.[8] Jamie Dore had to file suit on or before February 6, 1992, and Brandi Dore had to file suit on or before October 16, 1994. They filed suit in 1996. Thus, the statute of limitations bars Jamie's and Brandi's claims.

The Dore children contend that we should apply a modified relation back doctrine to save Jamie's and Brandi's claims. They assert that their claims are for wrongful death and, because Jason Dore's claim is not barred by the statute of limitations, their claims on the same "unitary cause of action" should also survive.

This proposed application of the relation back doctrine is mistaken. The Dore children correctly note that an efficient judicial system attempts to avoid a multiplicity of lawsuits, that the statute of limitations is generally disfavored, and that the relation back doctrine should be construed liberally. However, the relation back doctrine only applies when an amended pleading, filed after the statute of limitations has run, relates back to the original pleading that was filed before the statute of limitations expired.[9] Federal Rule of Civil Procedure 15(c) is similar to Alaska Civil Rule 15(c).[10] Professor Moore explains that "[i]t is implicit in [Federal Civil Rule 15] that in order to amend, a party must have a pleading on file." [11] Jamie and Brandi Dore are not filing an amendment to a timely original pleading; accord-ingly, the relation back doctrine does not apply.

■ The Dore children also assert, in one sentence only, that "because of mental instability Jason, Brandi, and Jamie Dore were under the subject of a Guardianship action. . . ." Incompetence due to mental illness or disability can toll the statute of limitations.[12] However, appellants proffered no evidence of mental disability to support this claim. This bare assertion is insufficient to raise a genuine issue of material fact or toll the statute of limitations.[13] Thus, Jamie's and Brandi's claims are barred by the statute of limitations. Because Jason's claim is not barred by the statute of limitations, we turn to the question of duty.

B. *The City Had No Duty to Arrest a Suspect on an Outstanding Warrant or Otherwise Prevent Harm to a Possible Crime Victim.*

■ "Determining whether a duty exists in the type of case presented is the first analytical step in deciding whether a negligence action can be maintained." [14] In order to reach the questions of whether the city has statutory immunity or has breached its duty, we must first determine whether the city owes a duty in tort to the plaintiff.[15]

Almost all jurisdictions hold that police negligent failure to arrest is not actionable. These courts employ a variety of reasons: lack of general tort duty,[16] statutory immuni-

8.  See AS 09.10.140(a); *Haakanson v. Wakefield Seafoods, Inc.,* 600 P.2d 1087, 1092 (Alaska 1979) (holding that the tolling of the statute of limitations in wrongful death claims is based on the age of the minor beneficiary).

9.  See Alaska R. Civ. P. 15(c):

Relation Back of Amendments. Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.

10.  See *Farmer v. State,* 788 P.2d 43, 47 (Alaska 1990) ("Federal Rule 15(c) largely parallels the state rule regarding the relation back of amendments. . . .").

11.  3 James Wm. Moore et al., *Moore's Federal Practice* § 15.19[1], at 15–78 (3d ed.1998).

12.  See AS 09.10.140(a).

13.  See *Brock v. Rogers & Babler, Inc.,* 536 P.2d 778, 783 (Alaska 1975) ("Assertions of fact in pleadings and memoranda are not admissible in evidence and cannot be relied upon for the purposes of summary judgment.").

14.  *Kooly v. State,* 958 P.2d 1106, 1108 (Alaska 1998).

15.  See *Stephens v. State, Dep't of Revenue,* 746 P.2d 908, 910 (Alaska 1987) ("Before we determine whether a statutory immunity applies to a given case, we will determine whether the State would be liable to the plaintiff in the absence of the immunity.").

16.  *See, e.g., McAlpine v. Multnomah County,* 131 Or.App. 136, 883 P.2d 869, 872–73 (1994) (holding that police had no duty to arrest on warrant where there was no special relationship and no

ty,[17] lack of causation,[18] lack of breach,[19] and application of the public duty doctrine.[20] The few cases that conclude that the police have an actionable duty to arrest rely on duty as defined by statute [21] or on a combination of egregious facts and an exception to the public duty doctrine.[22]

"The 'precise nature and extent' of a duty 'is a question of law which can be decided at the summary judgment stage.' " [23] We first look to statutes to determine whether an actionable duty exists. "When it is not governed by statute, the existence of a legal duty is a public policy question." [24]

1. *The city had no statutory duty.*

The Dore children argue that various portions of the City of Fairbanks Home Rule Charter and Code of Ordinances impose a statutory duty of care. Most of the sections cited by appellants deal generally with the powers of the city. Only § 13.4 regarding an oath of office expresses a concept of duty. However, § 13.4 creates a duty to uphold the United States and Alaska Constitutions and the charter and ordinances of Fairbanks.[25] As to the former, the Dore children have raised no constitutional issues in this appeal. As to the latter, none creates a duty of care. Thus, we see no basis in the Fairbanks Charter or ordinances to find the existence of a duty in this case.

Worthy of note, however, are the state statutes on domestic violence.[26] While AS 18.65.530 does make arrest mandatory in specified domestic violence situations, it expressly does not permit civil actions for the police's failure to arrest.[27] Under the domestic violence laws, there is no actionable

general foreseeability due to the intervening criminal act).

17. *See Howard v. City of Denver,* 837 P.2d 255, 258 (Colo.App.1992).

18. *See, e.g., Mack v. City of Monroe,* 595 So.2d 353, 358 (La.App.1992).

19. *See Hardy v. Bowie,* 744 So.2d 606, 614–15 (La.1999).

20. The public duty doctrine is a form of sovereign immunity which shields public officials from liability where the official breaches a general duty owed to the public at large. *See Adams v. State,* 555 P.2d 235, 241–42 (Alaska 1976). The Supreme Court long ago established that neglect of a general duty to the public was not actionable by an individual; rather, such neglect was "punishable by indictment only." *South v. Maryland,* 59 U.S. (18 How.) 396, 403, 15 L.Ed. 433 (1855). A majority of states still applies the public duty doctrine. *See Leake v. Cain,* 720 P.2d 152, 158 (Colo.1986) (citing cases); John H. Derrick, Annotation, *Modern Status of Rule Excusing Governmental Unit from Tort Liability on Theory that Only General, Not Particular, Duty Was Owed Under Circumstances,* 38 A.L.R.4th 1194, 1197–203 (1985 & Supp.2000); 57 Am.Jur.2d *Municipal, County, School, and State Tort Liability* §§ 141 & 144 (1988). Alaska does not. *See Adams,* 555 P.2d at 241–42.

21. *See Nearing v. Weaver,* 295 Or. 702, 670 P.2d 137, 140–41 (1983) (finding a duty to arrest based on domestic violence mandatory arrest statute and probable cause that husband violated restraining order); *Schear v. Board of County Comm'rs,* 101 N.M. 671, 687 P.2d 728, 729 (1984) (holding that police have a duty to investi-

gate a reported crime in progress); *California First Bank v. State,* 111 N.M. 64, 801 P.2d 646, 655–56 (1990) (extending *Schear* to impose on police a duty to arrest in drunk driving context); *Torres v. State,* 119 N.M. 609, 894 P.2d 386, 393 (1995) (holding that police have a duty to exercise reasonable care in criminal investigations and allowing a claim for negligent investigation of murder suspect who killed plaintiff's decedent).

22. *See, e.g., Mastroianni v. County of Suffolk,* 91 N.Y.2d 198, 668 N.Y.S.2d 542, 691 N.E.2d 613, 614 (1997) (holding that police had an actionable duty to reasonably respond when deceased had a protective order, a warrant existed for the husband's arrest, the deceased contacted the police, and the police assured her that they would do whatever they could).

23. *Smith v. State,* 921 P.2d 632, 634 (Alaska 1996) (quoting *Mulvihill v. Union Oil Co.,* 859 P.2d 1310, 1314 n. 4 (Alaska 1993)).

24. *Kooly v. State,* 958 P.2d 1106, 1108 (Alaska 1998).

25. "I do solemnly swear (or affirm) that I will support and defend the Constitution of the United States, the Constitution of the State of Alaska, the Charter and ordinances of the City of Fairbanks, and that I will faithfully discharge my duties as _____ to the best of my ability." Fairbanks, Alaska, Code of Ordinances pt. I, art. XIII, § 13.4 (2000).

26. *See* AS 18.65.510–90.

27. *See* AS 18.65.530(a) & (f).

duty to arrest.[28] The legislature passed these statutes effective July 1, 1996, long after Carmen's murder in 1986, so they do not apply here. However, they do suggest that the legislature has determined that the public policy of Alaska is not to impose an actionable duty for failure to arrest. We turn now directly to that question.

### 2. Public policy does not support imposing a duty.

▮ Actionable duty is a question of law and public policy: "an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection."[29] To determine whether actionable duty exists, we first determine the class of cases to which the duty would apply.[30] If no existing case law covers this class, we then weigh the factors that support and oppose the imposition of liability.[31]

The issue in this case is whether, after the issuance of an arrest warrant, the police have a duty to arrest the subject of that warrant in order to protect a potential victim from possible harm caused by criminal acts of a third party (the subject of the arrest warrant). This case is in the class of cases involving the relationship between the police and a person injured by allegedly negligent police failure to arrest a third party with dangerous propensities.

We have previously relied upon the Restatement (Second) of Torts to assist our determination of whether a defendant has a duty to protect a victim from third party harm.[32] Under the Restatement, the general tort duty rule is that a person has no duty to protect a victim from even foreseeable harm caused by a third person.[33] Restatement § 315 recognizes two exceptions: (a) when a special relationship exists between the defendant and a third person, and (b) when a special relationship exists between the defendant and the victim.[34] A special relationship between the defendant and a third person can exist between a third person having dangerous propensities and a defendant who takes charge of him (§ 319), between a parent and child (§ 316), between a master and servant (§ 317), and between a landowner and licensee (§ 318).[35] A special relationship between the defendant and the victim can exist between a common carrier and its passengers (§ 314A), between an innkeeper and her guests (§ 314A), between a landowner and his invitees (§ 314A), and between a victim and a defendant who is required by law or voluntarily takes custody of the victim under circumstances which deprive the victim of his normal opportunities for protection

---

**28.** The duties of a peace officer investigating a crime of domestic violence include: (1) transporting any victims from the place of the offense to a safe place in the community, (2) assisting the victim in removing from the residence any essential items belonging to the victim, (3) assisting any victims in obtaining medical treatment, and (4) providing notice of the rights of victims and services available. See AS 18.65.515(a)(1)-(4).

**29.** Mesiar v. Heckman, 964 P.2d 445, 448 (Alaska 1998) (quoting William L. Prosser, The Law of Torts § 53, at 325 (4th ed.1971)).

**30.** See id. at 450 (citing City of Kotzebue v. McLean, 702 P.2d 1309, 1314 (Alaska 1985)).

**31.** See Waskey v. Municipality of Anchorage, 909 P.2d 342, 343–44 (Alaska 1996).

**32.** See P.G. v. State, Dep't of Health and Human Servs., Div. of Family and Youth Servs., 4 P.3d 326 (Alaska 2000) (applying § 315); R.E. v. State, 878 P.2d 1341 (Alaska 1994) (applying §§ 314–15); Division of Corrections, Dep't of Health and

Social Servs. v. Neakok, 721 P.2d 1121 (Alaska 1986) (applying § 315); Syacek v. Shelley, 359 P.2d 127 (Alaska 1961) (adopting § 317).

**33.** Restatement (Second) of Torts § 314 (1965) provides that "[t]he fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action."

**34.** Restatement (Second) of Torts § 315 (1965) provides:

There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
(b) a special relation exists between the actor and the other which gives to the other a right to protection.

**35.** See id. §§ 315 cmt. c. & 316–19.

(§ 320).[36]

■ Under the Restatement framework, we perceive no special relationship between the police and the victims. None of the relationships in § 314A exists. Section 320 does not apply because the police did not take the Dore children into protective custody under circumstances which deprived them of the normal opportunities for protection.

But is there a special relationship between the police and Jack Dore as a person with dangerous propensities? Restatement § 319 imposes a duty on those in charge of a person having dangerous propensities in certain situations:

> One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm.[37]

The questions are whether the police "took charge" of Jack Dore and whether the police knew or should have known he was likely to cause bodily harm if not controlled.

The Colorado Supreme Court has interpreted the "takes charge" language of Restatement § 319 narrowly and concluded that police failure to arrest was *not* actionable. In *Leake v. Cain*,[38] the police detained and handcuffed a drunken and disruptive Ralph Crowe.[39] They released Ralph to his brother who appeared sober and who told officers that he would drive Ralph home. Instead, the Crowe brothers drove to a convenience store, changed drivers, and proceeded to another party. Arriving at the party, Ralph struck six pedestrians, killing two of them. Representatives of the deceased sued the city for wrongful death. After expressly rejecting the public duty doctrine, the Colorado Supreme Court applied "conventional tort principles" to find that the police had no duty to arrest Ralph.[40]

In its analysis, the Colorado Supreme Court noted the general rule that there is no duty to prevent a third person from harming another, absent a special relationship between the defendant and the wrongdoer or between the defendant and the victim.[41] The court noted that the police had a duty to prevent Ralph from harming others while he was handcuffed, because the police had taken charge of him, citing § 319.[42] However, the police discharged their duty by restraining Ralph until he calmed down. The officers' duty existed only for the time that they had taken charge of Ralph.

The Oregon Court of Appeals also applied Restatement § 319 in reviewing a dismissal of a negligence claim alleging police failure to arrest. In *McAlpine v. Multnomah County*,[43] the police conducted surveillance of Brian Charlesworth as part of an ongoing drug investigation.[44] Based on the findings of the investigation, the Oregon Parole Board revoked Charlesworth's parole and issued a warrant for his arrest. The police, however, did not immediately arrest Charlesworth. About a month later, Charlesworth assaulted and seriously injured McAlpine.[45] McAlpine sued for the alleged police negligence of failing to arrest Charlesworth on the outstanding warrant.

McAlpine conceded that there was no special relationship between the police and himself as a member of the general public.[46] The court found no special relationship between the police and Charlesworth because there was no allegation of arrest, custody, or otherwise taking charge of Charlesworth.

■ In the instant case, just as in *McAlpine*, the police did not take charge of Jack Dore. The police did not take him into custo-

---

**36.** *See id.* §§ 315 cmt. c., 314A & 320.

**37.** *Id.* § 319.

**38.** 720 P.2d 152 (Colo.1986).

**39.** *See id.* at 153–54.

**40.** *See id.* at 158–62.

**41.** *See id.* at 160.

**42.** *See id.* at 161.

**43.** 131 Or.App. 136, 883 P.2d 869 (1994).

**44.** *See id.* at 870.

**45.** *See id.* at 871.

**46.** *See id.* at 872.

dy, and the Dore children failed to allege that the police took charge of him in any other manner. (Indeed, the entire lawsuit is grounded on the police's failure to take him into custody.) The Dore children did allege that the state negligently "releas[ed] Jack J. Dore from mental confinement, at Fairbanks Memorial Hospital," but they subsequently dismissed all claims against the state. Because the police did not take charge of Jack Dore, the police had no tort duty to control him under Restatement § 319.

In addition, the Dore children offered no evidence that the police knew or should have known that Jack Dore was likely to cause bodily harm. The Dore children offered the warrant for his arrest, but it charged him with only harassment, a class B misdemeanor.[47] Even if we assume that the police knew of Jack's death threats to Carmen, the generality of the threats failed to give the police substantial enough information upon which to act.

The Dore children contend that *City of Kotzebue v. McLean*[48] establishes that the city owed a duty to Carmen Dore, her children, and even Jack Dore. The Dore children argue that the city, simply by maintaining a police force and responding to the complaints of death threats, has a duty to all citizens who either make or are the targets of death threats. The city responds that the duty of reasonable care set forth in *McLean* is only applicable to the class of cases narrowly defined by the facts in *McLean* and that the city owes no duty to Jason Dore as the son of a person injured by police failure to protect.

In *McLean*, we concluded that the police owed a duty of care to reasonably respond when police received a death threat from the assailant who identified himself and the scene of the crime minutes before committing the crime.[49] We expressly defined the class of cases that *McLean* governed to include the circumstances present in *McLean*:[50] (1) a police officer received a life-threatening call from the would-be assailant, (2) the police officer knew the identity of the caller-assailant, (3) the potential assailant identified the likely scene of the crime, (4) the police officer knew the proper response was to go and check out the scene, and (5) the police officer failed to contact another available officer to investigate.[51]

In *Adams v. State*, we rejected the public duty doctrine, exposing a relatively undeveloped area of law: general tort duties of the state or local government.[52] To facilitate development of this area, we initially adopted an *ad hoc* approach to duty analysis.[53] In the light of our recent decisions urging less fact-specific inquiries in duty analysis,[54] *McLean* should be understood as imposing a duty of reasonable care on the police to respond to threats of imminent, life-threatening, assaultive conduct when given sufficient specific information to respond. Thus, the specific facts of *McLean* are important only insofar as they indicate a relationship between the police and the imminent crime victim.

The present case is not in the same class as the imminent harm case of *McLean*. It is significant that in *McLean* the police, advised by the assailant, knew the likely time and place of the crime.[55] In this case, the Fair-

47. *See* AS 11.61.120(b).

48. 702 P.2d 1309 (Alaska 1985).

49. *Id.* at 1314–15.

50. *Id.* at 1314.

51. *See id.* The last specific fact—that the police officer failed to contact another available officer to investigate-is not properly a part of the duty analysis. "[F]act-intensive inquiries pertain to the issues of breach, causation, and damages, not the threshold legal question of whether a duty exists." *Bolieu v. Sisters of Providence*, 953 P.2d 1233, 1241 (Alaska 1998). "Particular conduct becomes important only when a duty is imposed;

the conduct then helps to determine the applicable standard of care...." *Mesiar v. Heckman*, 964 P.2d 445, 448 (Alaska 1998). That the police failed to act indicates that they breached a duty.

52. *See Adams*, 555 P.2d 235, 241–42 (Alaska 1976); *see also McLean*, 702 P.2d at 1313.

53. *See McLean*, 702 P.2d at 1313.

54. *See, e.g., Mesiar*, 964 P.2d at 448; *Kooly v. State*, 958 P.2d 1106, 1109 (Alaska 1998); *Bolieu*, 953 P.2d at 1241.

55. "[T]his case does not make the city responsible for injuries sustained by victims of criminal

banks police had little idea when or where Jack might carry out his threat, or even if he would do so. Therefore, this case is not governed by the *McLean* duty of the police to reasonably respond to situations of imminent danger.[56]

We conclude that the police had no tort duty to control Jack Dore because this case is not governed by *McLean* and because the requirements of Restatement § 319 are not met. Because this case falls within the class of cases using the Restatement framework to determine if a defendant has tort duty to protect a victim from third party harm, we need not proceed with the weighing of the *D.S.W. v. Fairbanks North Star Borough School District*[57] factors.

Our conclusion today should not be read to say that the police could never be responsible for injuries inflicted by dangerous third persons. Indeed, we have already so held in *McLean*, finding a duty in time-, location-, and actor-specific situations involving imminent, almost certain danger.[58] And other courts have imposed a duty on police to respond to situations involving less imminent danger.[59] However, there is no evidence in the present case that the police took charge of Jack Dore and that the police knew or should have known of his dangerous propensities. Guided by Restatement § 319, we conclude that the police owed no tort duty.

Because we hold that the city had no actionable duty to protect the Dore children, we need not reach the issues of whether summary judgment in favor of the city was proper on the issues of immunity and breach.

## V. CONCLUSION

Because the superior court did not err in granting summary judgment that Jamie's and Brandi's claims were barred by the statute of limitations and that the city had no actionable duty, we AFFIRM.

---

activity when the police receive vague, nonspecific calls in which the victim, the assailant, and the assailant's location remain unidentified." *McLean*, 702 P.2d at 1314–15.

**56.** *See id.* at 1315.

**57.** 628 P.2d 554 (Alaska 1981).

**58.** 702 P.2d at 1314–15.

**59.** *See Raucci v. Town of Rotterdam*, 902 F.2d 1050, 1055–58 (2d Cir.1990) (affirming a jury verdict finding police duty to protect where plaintiff had a protective order and police arrested estranged husband for aggravated harassment but failed to present evidence of death threats,

allowing husband to be released on $500 bail and then kill plaintiff's son); *Mastroianni*, 668 N.Y.S.2d 542, 691 N.E.2d at 614; *Sorichetti v. City of New York*, 65 N.Y.S.2d 461, 492 N.Y.S.2d 591, 482 N.E.2d 70, 75 (1985) (affirming jury verdict finding police duty where plaintiff had a protective order and police failed to investigate plaintiff's report of a death threat and delayed surrender of child custody); *Zwart v. Town of Wallkill*, 192 A.D.2d 831, 834, 596 N.Y.S.2d 557 (N.Y.App.Div.1993) (affirming denial of police summary judgment motion on lack of special relationship where plaintiff's decedent had a restraining order against former boyfriend and police had an arrest warrant for his violation of the order). We do not imply that similar fact situations should have the same outcome under principles of Alaska law.