OPINION OF THE COURT
Smith, J.
 Plaintiff’s complaint seeks damages stemming from an alleged failure to provide plaintiff’s decedent with protection after the police department had been directly notified that decedent’s husband had violated an order of protection. We *201 conclude that a special relationship between the police department and the decedent arose from the circumstances presented. We further conclude that a question of fact has been raised concerning the department’s duty of care owed to plaintiff’s decedent due to the existence of this special relationship. Accordingly, summary judgment should not have been granted to the defendants and the order of the Appellate Division should be reversed.
Based on the papers submitted on defendants’ motion, the record contains the following evidentiary allegations. On June 12, 1985, Family Court granted a petition filed under article 10 of the Family Court Act* by the Child Protective Agency of the Suffolk County Department of Social Services on behalf of decedent’s children against her estranged husband. Based upon the husband’s alleged history of abuse toward his wife and her children, the court issued a permanent order of protection pursuant to Family Court Act § 842 (a). The order provided that "[Anthony Swiggett] shall not have any contact with children or Mrs. Parker (Swiggett) and he is to remain away from their residence, to wit: 39 Pine Street, Central Islip, New York.” Thereafter, the court sent a copy of the order to the Third Precinct of the Suffolk County Police Department. The husband was arrested for violating the order of protection on June 24, 1985, less than two weeks after it was issued against him.
At approximately 9:06 p.m. on September 5, 1985, Suffolk County police officers responded to a 911 call from decedent that her husband had violated the order of protection by entering her residence and throwing her furniture out into the yard. The officers met decedent at her mother’s house where she accompanied the officers to her house located nearby. Upon arriving at the decedent’s residence, the officers noted several pieces of furniture strewn about the lawn including some chairs, a couch and a washing machine. At this point, the officers were presented with the order of protection by the decedent. The officers described the decedent as "very upset” and she stated that she wanted her husband "locked up.”
The officers discovered that the husband was visiting decedent’s next door neighbors located between 20 to 30 feet *202 away from decedent’s residence. When the officers requested that the husband come outside to speak with them, they smelled alcohol on his breath but did not find him intoxicated. Upon questioning, the husband denied entering his wife’s residence and removing the furniture. The officers questioned everyone present but no one, including the decedent, had actually seen who had moved the furniture. Although one person on the scene had seen the husband leaving the decedent’s residence earlier that day, she did not tell this to the officers. She later explained that she had not seen the husband move the furniture and she felt that that was all the officers were asking about.
The officers discovered that there were no outstanding warrants for the husband’s arrest. The officers were unsure how to proceed and called their supervisor for guidance. The supervising officer was asked whether it was necessary to see the subject within the premises "on an order of protection.” The supervisor responded that it "depends how the order of protection reads * * * but for you to arrest him he has to be there at the scene of his action.” The officers then asked, "So you can’t just do it on her say so that he was in the house prior?” The supervisor answered "Negative * * * it’s not like a warrant. He has to be there and * * * otherwise her complaint should be for the court * * * and you make a Field Report.”
Based upon this advice, the officers told decedent that "according to the information [they] had, there was no justification to arrest him on the violation of the Order of Protection.” According to one officer, "She was upset to the point she was crying, and she didn’t really understand why he wasn’t being arrested.” The other officer claimed that the decedent "began crying and pleading that we arrest him” and told the officer that she was "afraid of this man.” The officer told the husband "that I believed what [the wife] had told me, and * * * if I had to come back here again tonight, if there were any further problems, that he would be arrested and taken to jail.”
The officers remained on the scene for over an hour and watched while the wife moved her furniture back into her house. The officers did not enter the house itself or do any further investigation to ascertain who had moved the furniture. At approximately 10:25 p.m., the officers investigated an unrelated missing juvenile report they had received from a residence located across the street from decedent’s home. After investigating this report, the officers left the area for a meal break at around 10:46 p.m. At the time the officers left, they did not know where the husband was.
*203 At 10:54 p.m., the officers received a call to return to the area. The decedent had been stabbed. The same officers who had investigated the wife’s earlier report then canvassed the area looking for the husband. When they found him, he was covered in blood and his pocket contained a copy of the same order of protection which the officers had seen earlier. The wife died from her wounds and a jury later convicted the husband for the stabbing of his wife.
Plaintiff commenced the instant action to recover damages for decedent’s death. Defendants moved for summary judgment and Supreme Court denied the motion. The court found that the "order [of protection] satisfies proof of an affirmative duty to act, knowledge that inaction could lead to harm and justifiable reliance on the defendants’ affirmative undertaking.” The court also found sufficient questions of fact relating to the reasonableness of the actions of the officers which precluded summary judgment.
The Appellate Division reversed and dismissed the complaint. The Court held that the "unrebutted evidence submitted in support of the defendants’ motion for summary judgment established that the defendants did not owe a special duty to the plaintiff’s decedent.” The Court also found that the record established "that the actions of the police department were reasonable under the circumstances.” (228 AD2d 483.) This Court granted leave to appeal. We reverse.
DISCUSSION
As a general rule, a municipality may not be held liable for injuries resulting from a failure to provide police protection (see, Kircher v City of Jamestown, 74 NY2d 251, 255; Cuffy v City of New York, 69 NY2d 255, 260; Sorichetti v City of New York, 65 NY2d 461, 468; Riss v City of New York, 22 NY2d 579, 583). As we have stated, "a different rule 'could and would inevitably determine how the limited police resources of the community should be allocated and without predictable limits’ ” (Sorichetti, supra, at 468; see also, Kircher, supra, at 256; Cuffy, supra, at 260; Riss, supra, at 582). However, we have recognized potential liability stemming from the presence of a "special relationship existing between the municipality and the injured party” (Sorichetti, supra, at 468; see also, Kircher, supra, at 255-256; Cuffy, supra, at 260; Riss, supra, at 583 ["distinguishable * * * is the situation where the police authorities undertake responsibilities to particular members of the public and expose them, without adequate protection, to the risks which then materialize into actual losses”]).
*204 In Cuffy, we stated:
"The elements of this 'special relationship’ are: (1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality’s agents that inaction could lead to harm; (3) some form of direct contact between the municipality’s agents and the injured party; and (4) that party’s justifiable reliance on the municipality’s affirmative undertaking” (69 NY2d, at 260).
The first two elements are satisfied by the issuance of an order of protection under the Family Court Act which provides that an order "shall constitute authority” for an officer "to arrest a person charged with violating the terms of such order of protection” (Family Ct Act § 168; Sorichetti v City of New York, supra, at 469 ["The order evinces a preincident legislative and judicial determination that its holder should be accorded a reasonable degree of protection from a particular individual” and "is presumptive evidence that the individual whose conduct is proscribed has already been found by a court to be a dangerous or violent person”]). Clearly, a duly issued order of protection constitutes an "assumption” of an "affirmative duty” of protection coupled with an awareness that "inaction could lead to harm” (Cuffy v City of New York, supra, at 260).
The third element which must be satisfied to establish a "special relationship” — some form of direct contact between the municipality’s agents and the injured party — depends upon the peculiar circumstances of each case (Cuffy v City of New York, supra, at 262). Although, this element of the test outlined in Cuffy may not be satisfied by the existence of the order of protection itself, we have generally utilized a flexible approach in analyzing this element when such an order is presented (compare, Kircher v City of Jamestown, 74 NY2d 251, supra; and Merced v City of New York, 75 NY2d 798, with Sorichetti v City of New York, 65 NY2d 461, supra). It can hardly be disputed that this element is satisfied under the facts presented here. Not only was there direct and immediate contact between the officers and the decedent concerning a violation of the order of protection, but the police department had separate and verifiable knowledge of the husband’s violent history through his prior convictions and arrests — which included an arrest a few months earlier for violating the same order of protection.
*205 The remaining element which must be demonstrated to constitute a special relationship is that of justifiable reliance. The mere existence of an order of protection, standing alone, will not prove justifiable reliance. However, upon an examination of all of the circumstances here, we conclude that the victim’s justifiable reliance on the officers’ undertaking to protect her was established.
As noted above, after reviewing the order of protection, the officers, in response to her pleas for assistance, assured decedent that although they could not presently make an arrest, they "would do whatever [they] could” if she had any further problems with her husband. The officers then waited in front of the residence, observing decedent while she brought her furniture back inside her home. Thereafter, the officers remained on the scene, across the street from the Parker home, handling a report of a missing juvenile. Within minutes of their departure from the immediate area, the officers were directed to return to decedent’s residence, where they found her fatally stabbed. Additionally, the victim had sought and obtained police intervention on a previous occasion when her husband had violated the very same protective order. The direct contact between the wife and the officers coupled with the circumstances giving rise to the officers’ own belief that the order of protection had been violated support the conclusion that the wife justifiably relied upon the officers’ "aid in securing the protection such order was intended to afford” (Family Ct Act § 168 [1]). Under these circumstances, the fact that the officers informed decedent that they would not make an arrest does not, alone, render her reliance unjustified, given their other affirmative undertakings on her behalf.
Thus, we conclude that the elements of a special relationship as set forth in Cuffy were present here. The existence of the order of protection, the direct contact of the police with the decedent and the decedent’s justifiable reliance on the officers’ affirmative undertaking on her behalf all serve to demonstrate that a special relationship was established here.
The question remains whether the record presents a question of fact concerning the reasonableness of the actions of the municipality’s police department. The Appellate Division found that the officers’ actions were reasonable as a matter of law. We disagree. Construing the record in plaintiff’s favor, as we must on defendants’ motion for summary judgment, we conclude that a question of fact has been raised regarding whether the actions taken by the officers were reasonable in *206 securing protection for the decedent under the circumstances presented. Such questions concerning reasonableness are properly left for the fact finder under an examination of all the evidence.
The order of the Appellate Division should be reversed, with costs, and defendants’ motion for summary judgment denied.
Chief Judge Kaye and Judges Titone, Bellacosa, Levine, Ciparick and Wesley concur.
Order reversed, etc.

 Article 10 of Family Court Act "is designed to establish procedures to help protect children from injury or mistreatment and to help safeguard their physical, mental, and emotional well-being. It is designed to provide a due process of law for determining when the state, through its family court, may intervene against the wishes of a parent on behalf of a child so that his needs are properly met” (Family Ct Act § 1011).