OPINION OF THE COURT
Abdus-Salaam, J.
In this negligence action, we must determine whether the evidence submitted by plaintiffs in opposition to the City of New York’s summary judgment motion was sufficient to raise a triable issue of fact as to the existence of a special relationship between plaintiffs and the City. We hold that the evidence presented in this case was sufficient to defeat the motion, and we therefore reverse the order of the Appellate Division.
*479 L
Commencing in the year 2000, plaintiff Jandy Coleson suffered both verbal and physical abuse at the hands of her husband Samuel Coleson. As a result, Coleson was jailed on a number of occasions and plaintiff obtained numerous orders of protection against him. In May 2004, following an incident where Coleson was abusing drugs, plaintiff ordered Coleson to leave the apartment and she changed the locks. On June 23, 2004, Coleson tried to force himself into the building and threatened to kill plaintiff and stab her with a screwdriver he was carrying. Plaintiff called the New York City Police Department (NYPD), but when they arrived on the scene, Coleson had already fled. The officers, including one Officer Reyes, searched for Coleson with plaintiffs assistance. Coleson was apprehended shortly before 10:00 a.m.
On the same date, plaintiff applied for another order of protection and was later transported by the police to the local precinct with her son. Plaintiff testified in her deposition that while at the precinct, an officer told her that “they had arrested [Coleson], he’s going to be in prison for a while, [and that she should not] worry, [she] was going to be given protection.” She was escorted by the police to Safe Horizon, a nonprofit organization that provides services to domestic violence victims, to meet with a counselor and receive other assistance. That evening, at approximately 11:00 p.m., plaintiff received a follow-up phone call from Officer Reyes, who told her that Coleson “was in front of the judge” and that he was going to be “sentence[d].” Reyes also “told [plaintiff] that everything was okay, that everything was in . . . process, [and] that she was going to keep in contact with [her].” This phone call lasted for approximately two hours.
Two days later, plaintiff went to pick up her son from his school, which was across from a car wash, when she saw Coleson. Coleson approached her, stating that he wanted to speak with her. He took out a knife and stabbed plaintiff in the back. The child, who was seven years old at the time, testified at his deposition that he saw Coleson chasing plaintiff with a knife while plaintiff screamed for help. The child hid behind a car, and a man who worked at the car wash took the child and locked him in a broom closet. About 5 to 10 minutes later the child came out of the closet and saw his mother on the ground in a pool of blood.
*480 Plaintiff, on behalf of herself and her son, commenced this negligence action against the City of New York and the NYPD (collectively the City). Plaintiffs also asserted a claim for negligent infliction of emotional distress, arguing that the child was in the zone of danger during the incident.
The City moved for summary judgment dismissing the complaint, arguing that the statements Officer Reyes allegedly made to plaintiff were not definite enough to create justifiable reliance in order to establish a special relationship in satisfaction of the duty prong of plaintiffs’ negligence cause of action. Further, the City argued that the child was not in the zone of danger because he did not witness the attack on his mother. In opposition, plaintiffs argued that a special duty existed between plaintiff and the City based on the NYPD’s agreement to provide protection to her. They also asserted that the child did witness the assault because he observed Coleson approach his mother with a knife, and although he was placed in a broom closet, he could hear what was occurring.
Supreme Court granted the City’s motion for summary judgment (Coleson v City of New York, 2012 NY Slip Op 33713[U] [Sup Ct, Bronx County 2012]). The court held that plaintiffs failed to establish the requirements for a special relationship because they failed “to demonstrate that the verbal assurance of protection at the precinct was followed by any visible police protection” and “fail[ed] to show any post arraignment promise of protection” (id. at *5). The court also determined that the child was not in the zone of danger because he was locked in a broom closet at the time of the incident.
The Appellate Division affirmed (Coleson v City of New York, 106 AD3d 474 [1st Dept 2013]), holding that “[i]n the absence of any evidence that defendants assumed an affirmative duty to protect plaintiff from attacks by her husband, [the City does] not owe a duty of care to plaintiff’ (id. at 474, citing Valdez v City of New York, 18 NY3d 69 [2011]). The court stated that the statements of the officers which plaintiff relied upon “were too vague to constitute promises giving rise to a duty of care” (106 AD3d at 475, citing Dinardo v City of New York, 13 NY3d 872, 874 [2009]). Finally, the court concluded that based on the lack of a special relationship, the child’s claim for negligent infliction of emotional distress should also be dismissed.
In a concurring opinion, two justices noted that although the majority’s ruling is mandated under Valdez, “[i]f the City’s *481 statements in this case are not specific enough to find that [the City] assumed an affirmative duty to protect plaintiff, it is difficult to imagine any statements that could ever be specific enough” and “it seems likely that no court of this State will ever find a municipality to have a special duty toward a plaintiff unless the municipality affirmatively consents to assume such a duty” (106 AD3d at 477).
The Appellate Division granted plaintiffs’ motion for leave to appeal to this Court and certified the question of whether the order was properly made (2013 NY Slip Op 88312[U] [2013]).
II
Liability for a claim that a municipality negligently exercised a governmental function “turns upon the existence of a special duty to the injured person, in contrast to a general duty owed to the public” (Garrett v Holiday Inns, 58 NY2d 253, 261 [1983]; see Laratro v City of New York, 8 NY3d 79 [2006]; Cuffy v City of New York, 69 NY2d 255 [1987]). “[A] duty to exercise reasonable care toward [a] plaintiff’ is “born of a special relationship between the plaintiff and the governmental entity” (Pelaez v Seide, 2 NY3d 186, 198-199 [2004]). This Court has determined that a special relationship can be formed in three ways:
“(1) when the municipality violates a statutory duty enacted for the benefit of a particular class of persons; (2) when it voluntarily assumes a duty that generates justifiable reliance by the person who benefits from the duty; or (3) when the municipality assumes positive direction and control in the face of a known, blatant and dangerous safety violation” (Pelaez, 2 NY3d at 199-200).
In Cuffy v City of New York (69 NY2d 255 [1987]), we listed the requisite elements for a duty voluntarily assumed:
“(1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality’s agents that inaction could lead to harm; (3) some form of direct contact between the municipality’s agents and the injured party; and (4) that party’s justifiable reliance on the municipality’s affirmative undertaking” (id. at 260).
We noted that “the injured party’s reliance is . . . critical” (id. at 261).
*482 Applying the Cuffy factors here, we conclude that plaintiffs raised a triable issue of fact as to whether a special relationship existed. With regard to the first factor, a jury could conclude that the police officers made promises to protect plaintiff. Plaintiff was notified by the police that Coleson was arrested, that he was in front of a judge to be sentenced, would be in jail for a while, and that the police would be in contact with her. As to the second factor, the police officers conceivably knew that Coleson would harm plaintiff if he was not apprehended, as evidenced by his arrest and the issuance of an order of protection to plaintiff. Given that plaintiff was told by Officer Reyes that everything was in process and she would keep in contact, there is an issue of fact as to whether the police knew that their inaction could lead to harm. The third factor is easily met, as plaintiff had direct contact with the police, by the police responding to her call about Coleson’s threats, making an arrest, escorting her to the police precinct, and plaintiffs phone call with Officer Reyes. Finally, regarding a party’s justifiable reliance on the municipality’s affirmative undertaking, given the assurances that plaintiff received from Officer Reyes that Coleson was in jail and that he would be there for a while, a jury could find that it was reasonable for plaintiff to believe that Coleson would be jailed for the foreseeable future, and that the police would contact her if that turned out not to be the case.
The conduct of the police here was more substantial, involved, and interactive than the police conduct in Valdez. In Valdez v City of New York (18 NY3d 69 [2011]), the plaintiff was shot by her estranged boyfriend, after, in an attempt to flee, she was advised by officers that she should go back into her apartment and that the police would locate and arrest her boyfriend. This Court concluded that the officer’s statements to the plaintiff did not create a special relationship because “[i]t was not reasonable for [the plaintiff] to conclude, based on nothing more than the officer’s statement that the police were going to arrest [her boyfriend] ‘immediately,’ that she could relax her vigilance indefinitely” (id. at 81).
Unlike in Valdez, plaintiff was told by the police that Coleson was going to be in prison for a while and that they would stay in contact with plaintiff. Contrary to the City’s and the dissent’s contention, these particular assertions were not vague (cf. Dinardo v City of New York, 13 NY3d at 874). This Court has stated that
*483 “at the heart of most of these ‘special duty’ cases is the unfairness that the courts have perceived in precluding recovery when a municipality’s voluntary undertaking has lulled the injured party into a false sense of security and has thereby induced him [or her] either to relax his [or her] own vigilance or to forego other available avenues of protection” (Cuffy, 69 NY2d at 261).
The role that police officers play when responding to domestic violence victims is critical in allowing victims to feel consoled and supported. We do not, as the dissent suggests, seek to discourage the police from being responsive to crime victims. Rather, the police should make assurances only to the extent that they have an actual basis for such assurances, and to the extent that such assurances will not lull a victim into a false sense of security. The statements made by Officer Reyes to plaintiff may have lulled her into believing that she could relax her vigilance for a reasonable period of time, certainly more than two days.
Whether a special relationship exists is generally a question for the jury (see De Long v County of Erie, 60 NY2d 296, 306 [1983] ). On this record, plaintiffs raised a triable issue of fact as to whether a special relationship existed that should be decided by a jury.
As the Appellate Division only addressed the issue of special relationship, remittal to that court to review the City’s claim of governmental immunity is warranted.
III.
Plaintiffs argue that the child was in the zone of danger because, although he was in a closet at the time his mother was stabbed, he saw Coleson with the knife and while in the closet heard his mother’s screams. The City argues that the child was not in the zone of danger because he was in the closet and did not see his mother being stabbed. “In order to recover for an alleged emotional injury based on the zone of danger theory . . . , a plaintiff must establish that he suffered serious emotional distress that was proximately caused by the observation of a family member’s death or serious injury while in the zone of danger” (Stamm v PHH Veh. Mgt. Servs., LLC, 32 AD3d 784, 786 [1st Dept 2006], citing Bovsun v Sanperi, 61 NY2d 219 [1984] ; see Trombetta v Conkling, 82 NY2d 549 [1993]). We conclude that the child was not in the zone of danger because *484 he was in a broom closet while his mother was stabbed, and thus neither saw the incident nor was immediately aware of the incident at the time it occurred.
IV
In sum, the acts of the police officers in this case were sufficient to raise a triable issue of fact as to justifiable reliance. Accordingly, the order of the Appellate Division should be modified in accordance with this opinion, without costs, the case remitted to the Appellate Division for consideration of issues raised but not determined on appeal to that court, and as so modified, affirmed and the certified question not answered upon the ground that it is unnecessary.