OPINION OF THE COURT
Alan C. Marin, J.
This is the decision following the trial on liability of the claim of Jose Olivar, which arose from his arrest on a warrant *741 that he contends was improper, in that it was based on a charge that had been dismissed.
In May of 2002, Mr. Olivar was arrested in New York County for trespass, marijuana possession and possession of a knife. On June 6 of that year, Olivar had four charges brought against him: trespass under Penal Law § 140.05; possession of marijuana under Penal Law § 221.05 (two counts); and possession of a knife per section 10-133 of the Administrative Code of the City of New York. None of the four are misdemeanors; the Penal Law charges are classified as violations, and possession of a knife is an offense under such section of the Administrative Code.
Olivar believed all charges were dismissed because of his appearance in Criminal Court at 346 Broadway in Manhattan on July 15, 2002. Claimant testified that he was informed that all charges against him were dismissed, and was handed a one-page document, denominated as claimant’s exhibit 1. This is a copy of a form on the letterhead of the Criminal Court of the City of New York, the preprinted text of which provides: “The issuing agency has failed to file a legally acceptable accusatory instrument with this court. The matter has been dismissed. There is no need for you to return to court on the docket number referenced above.” Handwritten on the upper right-hand corner are four numbers in this abbreviated fashion: “2002SN058504, 58505, 58510 and 58501.” Also handwritten is an initialed signature and the date, “7/15/02.”
Defendant objected to the admissibility of exhibit 1 on a number of grounds, including that the proffered exhibit was a copy (claimant testified that he had the original at home) and that it was not authenticated. Defendant concedes that if admissible, it would only be to demonstrate claimant’s state of mind — that Mr. Olivar believed all charges against him had been dismissed.
Six years later, on May 8, 2008, Olivar was stopped by police for a traffic violation in Queens County, and then arrested because a warrant from the 2002 charges remained outstanding. Claimant was not released until the next day when he appeared before a judge. (While in his cell, he had been assaulted by another detainee and was hospitalized overnight.)
Antonio Diaz, an employee of the state court system, took the witness stand at trial. Mr. Diaz, a court clerk, had been assigned to Criminal Court at the 346 Broadway location from 1988 to 2004. Mr. Diaz testified that exhibit 1 could have been *742 used in his court in 2002, and that court clerks would, on occasion, enter notations in handwriting on such a document.
Defendant’s exhibits C through F were introduced through witness Diaz. Each is a one-page certificate of disposition with an embossed seal and official signature. Exhibits C, D and E cover three of the four charges and indicate that each was dismissed on June 28, 2002 as “legally insufficient.” Exhibit F shows that docket number 2002SN058505, the knife charge, was dismissed on May 9 in 2008, the day after his more recent arrest.
In any event, even if we assume that all four charges were dismissed in 2002, then Jose Olivar’s arrest in 2008 would have been as a result of a ministerial error. To sustain a cause of action where a ministerial act is involved,[1] a plaintiff or claimant must show the existence of a special duty. (Valdez v City of New York, 18 NY3d 69 [2011].)
The Court of Appeals has set forth the elements of such special duty or relationship as follows:
“(1) an assumption by the municipality [or governmental entity], through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality’s agents that inaction could lead to harm; (3) some form of direct contact between the municipality’s agents and the injured party; and (4) that party’s justifiable reliance on the municipality’s affirmative undertaking.” (Cuffy v City of New York, 69 NY2d 255, 260 [1987] [citations omitted].)
The Cuffy court characterized the critical element in determining the existence of a special duty as follows:
“Indeed, at the heart of most of these ‘special duty’ cases is the unfairness that the courts have perceived in precluding recovery when a municipality’s voluntary undertaking has lulled the injured party into a false sense of security and has thereby induced him either to relax his own vigilance or to forego other available avenues of protection.” (69 NY2d at 261.)
For example, the plaintiff in Coleson v City of New York (24 NY3d 476, 481 [2014]) had orders of protection against her *743 husband. After a particularly harrowing encounter with him, Ms. Coleson was transported by the police to the precinct and told not to worry, that she would be given protection. The Court of Appeals reversed an affirmance of summary judgment dismissing Ms. Coleson’s case, and ruled that whether there was a special duty or relationship was for the trier of fact.
Valdez also involved a violation of protection orders (against plaintiff’s ex-boyfriend), although the Court of Appeals upheld the First Department’s vacating of the jury’s verdict in favor of plaintiff on the ground that given Ms. Valdez’s one phone call to the precinct, it was unreasonable for her to relax her vigilance.
In Pelaez v Seide (2 NY3d 186, 199-200 [2004]), the Court of Appeals explained that a special relationship or duty can be created in three ways: (1) a municipality violates a duty enacted by statute for a particular class of persons; (2) it voluntarily assumes a duty that is justifiably relied upon; or (3) the municipality assumes positive direction and control of a situation in the face of a dangerous safety violation that is blatant and known. The second way — via voluntary assumption — was what Cuffy addressed and is the one relevant to Mr. Olivar’s claim. The last item, relating to a safety violation, clearly does not apply to the facts in our case. Nor can Mr. Olivar rely on the violation of a statutory duty.[2]
McLean v City of New York (12 NY3d 194 [2009]) was the clearest, perhaps the first, enunciation of the principle that a ministerial error in the exercise of a governmental function will not result in liability unless a special duty obtained. This court a number of years ago decided a case in favor of claimants who were attacked by a convicted felon who had been released from prison because of a ministerial error by a court clerk. The claimants were members of the general public; no special relationship was implicated. My decision, which was upheld on appeal in 2003, would not stand today in light of McLean et al. (Steel v State of New York, 307 AD2d 919 [2d Dept 2003]).
Thus, the claim of Jose Olivar, who has failed to prove the existence of a special duty, must be dismissed; the Clerk of the *744 Court is directed to enter judgment dismissing claim No. 117918.

. The act or omission must be in the course of a governmental, not a proprietary, capacity. (See Wittorf v City of New York, 23 NY3d 473 [2014]; Applewhite v Accuhealth, Inc., 21 NY3d 420, 425 [2013].)

. The Pelaez court elaborated on when a special relationship would be created from the breach of a statutory duty: the party must be in the class for whose particular benefit the law was enacted, a private right to sue would promote the legislative purpose and such right would be consistent with the legislative scheme. (2 NY3d at 200.)