Boyd v Village of Mamaroneck

2026 NY Slip Op 02239

April 15, 2026

Appellate Division, Second Department

Taylor

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

Stephen A. Boyd, etc., appellant,

v

Village of Mamaroneck, et al., respondents, et al., defendants.

Supreme Court of the State of New York, Appellate Division, Second Judicial Department

Decided on April 15, 2026

2021-02568, 2021-04904, (Index No. 60693/19)

Paul Wooten, J.P.

Lillian Wan

Janice A. Taylor

James P. Mccormack, JJ.

Rober I. Gruber, P.C. (Shayne, Dachs, New York, NY [Jonathan A. Dachs], of counsel), for appellant.

Abrams Fensterman LLP, White Plains, NY (Lisa Colosi Florio, Robert A. Spolzino, and Mark Goreczny of counsel), for respondents Village of Mamaroneck, Village of Mamaroneck Police Department, Christopher Leahy, Anthony Colletti, Gary Galvao, and Michael Bonacci.

John M. Nonna, County Attorney, White Plains, NY (David H. Chen and Justin R. Adin of counsel), for respondents County of Westchester, Child Protective Services, Anthony A. Scarpino, Jr., Amit Parab, and Mary Clark.

APPEALS by the plaintiff, in an action, inter alia, to recover damages for negligence and wrongful death, from (1) an amended order of the Supreme Court (James W. Hubert, J.), dated March 4, 2021, and entered in Westchester County, and (2) an order of the same court dated June 7, 2021. The amended order granted the separate motions of the defendants County of Westchester, Child Protective Services, Anthony A. Scarpino, Jr., Amit Parab, individually and as Assistant District Attorney of the County of Westchester, and Mary Clark, individually and as Assistant District Attorney of the County of Westchester, and the defendants Village of Mamaroneck, Village of Mamaroneck Police Department, Christopher Leahy, individually and as Chief of Police of the Village of Mamaroneck, Anthony Colletti, individually and as a police officer of the Village of Mamaroneck, Gary Galvao, individually and as a police officer of the Village of Mamaroneck, and Michael Bonacci, individually and as a police officer of the Village of Mamaroneck, pursuant to CPLR 3211(a) to dismiss the amended complaint insofar as asserted against each of them. The order dated June 7, 2021, denied the plaintiff's motion for leave to serve and file a proposed second amended complaint and for leave to amend the notice of claim or, alternatively, for leave to serve a late notice of claim.

Taylor, J.

[*1]

DECISION & ORDER

This appeal presents this Court with an opportunity to provide additional clarity on when a municipality may be said to have assumed a special duty of care with respect to a plaintiff, subjecting the municipality to liability in negligence for breaching that special duty, and, relatedly, when the municipality may rely on the governmental function immunity defense. For the reasons that follow, we hold that a municipality may be said to assume a special duty of care with respect to a protected party, or the parent of one, when responding to a request to enforce the "stay away" provisions of a court order like the one at issue in this case. Furthermore, the government defendants in this case, Village of Mamaroneck, Village of Mamaroneck Police Department (hereinafter the [*2]Village Police Department), Christopher Leahy, Gary Galvao, Anthony Colletti, and Michael Bonacci (hereinafter collectively the Village defendants) and County of Westchester, Child Protective Services (hereinafter CPS), Anthony A. Scarpino, Jr., Amit Parab, and Mary Clark (hereinafter collectively the County defendants and together with the Village defendants, the government defendants) did not demonstrate on their separate motions pursuant to CPLR 3211(a) to dismiss the amended complaint insofar as asserted against each of them, that their response to such a request by the plaintiff, Stephen A. Boyd, was wholly protected by the governmental function immunity defense. Accordingly, the Supreme Court erred in granting the government defendants' separate motions pursuant to CPLR 3211(a) to dismiss the amended complaint insofar as asserted against each of them.

I. Factual and Procedural Background

The plaintiff and the defendant Cynthia Arce (hereinafter the mother) were the parents of Gabriella Maria Boyd (hereinafter the child), now deceased. According to the plaintiff, custody of the child was shared between the plaintiff and the mother pursuant to a written agreement (hereinafter the agreement).

On April 27, 2018, the plaintiff moved by order to show cause in the Family Court, Westchester County, to modify the agreement so as to award him sole custody of the child, who was then almost three years old, and for a temporary order of protection in favor of the plaintiff and the child and against the mother. The same day, the Family Court signed the proposed order to show cause (hereinafter the Family Court order), and granted certain interim relief, pending a hearing scheduled for May 4, 2018, including ordering that the plaintiff "is hereby awarded temporary physical custody of the minor child" and that the mother "is hereby directed to stay away from the [plaintiff] and the minor child."

Later that day, the plaintiff went to the Village Police Department seeking help in serving the mother with the Family Court order and effectuating the temporary change of physical custody set forth therein. Thereafter, according to the plaintiff, he traveled with police officers to the mother's residence where he observed the police officers serve the mother with the Family Court order. The plaintiff then observed that the mother refused to relinquish custody of the child to the police officers in that she "slammed" the door on them.

Afterwards, the plaintiff and the police officers returned to the police station, where the officers allegedly called Assistant District Attorney (hereinafter ADA) Parab, who was employed by the Westchester County District Attorney's Office (hereinafter the District Attorney's Office). Parab allegedly told the police officers, as well as the plaintiff, that the police officers were not authorized to enter the mother's residence to remove the child or to arrest the mother for violating the terms of the Family Court order. The plaintiff's Family Court attorney also allegedly spoke with another ADA at the District Attorney's Office, the defendant Mary Clark. Clark allegedly told the plaintiff's Family Court attorney that she could not advise the police officers in connection with the Family Court order because it did not relate to a criminal matter.

The next day, April 28, 2018, Village police officers were called to the mother's residence, where they discovered that the child was deceased. The mother was arrested at the scene and subsequently convicted of murder in the second degree related to the child's death (see People v Arce, 196 AD3d 696).

On July 3, 2018, the plaintiff served a notice of claim alleging, in substance, that the government defendants had been negligent, which was a proximate cause of the child's death. A hearing pursuant to General Municipal Law § 50-h was conducted on December 3, 2018. In an amended complaint dated November 18, 2019, the plaintiff asserted 51 causes of action, alleging, inter alia, that the government defendants were negligent in failing to enforce the Family Court order, which was a proximate cause of the child's death.

The County defendants moved pursuant to CPLR 3211(a)(7) to dismiss the amended complaint insofar as asserted against them. The Village defendants separately moved pursuant to CPLR 3211(a)(7) to dismiss the amended complaint insofar as asserted against them. The plaintiff opposed both motions. In an amended order dated March 4, 2021, the Supreme Court granted the separate motions. The plaintiff appeals from this order.

Thereafter, on June 1, 2020, the plaintiff moved for leave to serve and file a proposed second amended complaint and for leave to amend the notice of claim or, alternatively, for leave to serve a late notice of claim. In an order dated June 7, 2021, the Supreme Court denied the motion. The plaintiff appeals from this order as well.

II. The Government Defendants' Separate CPLR 3211(a)(7) Motions

On a motion to dismiss a complaint pursuant to CPLR 3211(a)(7), a reviewing court must "accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (Leon v Martinez, 84 NY2d 83, 87-88; see Barbetta v NBCUniversal Media, LLC, 227 AD3d 763, 765; O'Neill v Wilder, 204 AD3d 823, 823). "Where, as here, evidentiary material is submitted and considered on a motion to dismiss a complaint pursuant to CPLR 3211(a)(7), and the motion is not converted into one for summary judgment, the question becomes whether the plaintiff has a cause of action, not whether the plaintiff has stated one and, unless it has been shown that a material fact as claimed by the plaintiff to be one is not a fact at all and unless it can be said that no significant dispute exists regarding it, dismissal shall not eventuate" (Feldman v Nassau Life Ins. Co., 224 AD3d 801, 803 [internal quotation marks omitted]; see Kefalas v Pappas, 226 AD3d 757, 759).

"When a negligence claim is asserted against a municipality, the first issue for a court to decide is whether the municipal entity was engaged in a proprietary function or acted in a governmental capacity at the time the claim arose" (Hershkovitz v Brown, 234 AD3d 946, 947 [internal quotation marks omitted]). "If the municipality is engaged in a proprietary function, it is subject to suit under the ordinary rules of negligence" (P.D. v County of Suffolk, 231 AD3d 1, 5 [internal quotation marks omitted]).

A municipality will be deemed to have been engaged in a governmental function when, as here, its acts are undertaken for the protection and safety of the public pursuant to its general police powers (see Hershkovitz v Brown, 234 AD3d at 947). Therefore, because the government defendants were acting in a governmental capacity at the time the plaintiff's claim arose, the ordinary rules of negligence do not apply to the government defendants' conduct, and the plaintiff was "required to prove that [the government] defendants owed [him] a special duty of care as an essential element of [his] negligence claims" (Howell v City of New York, 39 NY3d 1006, 1008 [internal quotation marks omitted]; see Canberg v County of Nassau, 214 AD3d 943, 946; Trenholm-Owens v City of Yonkers, 197 AD3d 521, 523).

Further, when, as here, "both the special duty requirement and the governmental function immunity defense are asserted in a negligence case, the rule that emerges is that government action, if discretionary, may not be a basis for liability, while ministerial actions may be, but only if they violate a special duty owed to the plaintiff, apart from any duty to the public in general" (Ferreira v City of Binghamton, 38 NY3d 298, 311-312 [alteration and internal quotation marks omitted]; see P.D. v County of Suffolk, 231 AD3d at 6). "In other words, in a negligence action where the municipality has raised the governmental function immunity defense, a plaintiff may only hold the municipality liable for actions taken in its governmental capacity where (1) a special duty exists and (2) the municipality's actions were ministerial in nature and not the result of discretionary decision-making" (Walker-Rodriguez v City of New York, 231 AD3d 1090, 1093).

A. The Plaintiff Set Forth a Cognizable Legal Theory of Recovery in Negligence Based on the Existence of an Alleged Special Relationship Between the Plaintiff or the Child and the Government Defendants

Insofar as relevant here, a special duty arises where "the government entity voluntarily assumed a duty to the plaintiff beyond what was owed to the public generally" (Maldovan v County of Erie, 39 NY3d 166, 171 [internal quotation marks omitted]; see Adams v Suffolk County, 234 AD3d 1, 5-6)FN1. In this context, which is often referred to as a "special relationship" between the government entity and a plaintiff or plaintiffs, the government entity has a "duty to use reasonable care for those persons' benefit" (Garrett v Holiday Inns, 58 NY2d 253, 261), "notwithstanding that absent its voluntary assumption of that duty, none would have otherwise existed" (Florence v Goldberg, 44 NY2d 189, 196; see Adams v Suffolk County, 234 AD3d at 6). To establish the existence of a special relationship, a plaintiff is required to prove four elements, also referred to as "the Cuffy factors" or "the Cuffy test," namely:

"(1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking" (Cuffy v City of New York, 69 NY2d 255, 260; see Maldovan v County of Erie, 39 NY3d at 172; Adams v Suffolk County, 234 AD3d at 5-6).

At the heart of a special relationship case "is the unfairness that the courts have perceived in precluding recovery when a municipality's voluntary undertaking has lulled the injured party into a false sense of security and has thereby induced him [or her] either to relax his [or her] own vigilance or to forego other available avenues of protection" (Coleson v City of New York, 24 NY3d 476, 483 [internal quotation marks omitted]). The presence of a special relationship is generally a question for the trier of fact (see id.).

Significantly, in Mastroianni v County of Suffolk (91 NY2d 198, 204), the Court of Appeals determined that the first two elements of a "special relationship" are "satisfied by the issuance of an order of protection under the Family Court Act" (internal quotation marks omitted). The Court explained that "a duly issued order of protection constitutes an 'assumption' of an 'affirmative duty' of protection coupled with an awareness that 'inaction could lead to harm'" (id., quoting Cuffy v City of New York, 69 NY2d at 260).

Here, we conclude that the Family Court order may properly be construed as a temporary order of protection under the Family Court Act (see Family Ct Act §§ 153-c, 168, 655) or, at the very least, for the purpose of determining whether a special relationship existed between the plaintiff and the government defendants, its equivalent. While the Family Court Act prescribes that certain language shall be included in a temporary order of protection, the absence of such language "shall not affect the validity of" the order (id. at § 168[3]). In evaluating whether the Family Court order constituted a temporary order of protection, we note, most importantly, that the language of the order specifically and clearly directed the mother "to stay away from" the child and awarded the plaintiff temporary physical custody of the child pending the hearing scheduled for May 4, 2018. Both the form and the effect of the Family Court order hewed closely enough to the language more typically found in a temporary order of protection such that we discern no reason to diverge from the framework established in Mastroianni. Pursuant to Mastroianni, we conclude that the amended complaint sufficiently stated the first two elements of a special relationship based on the issuance of the Family Court order alone (see Mastroianni v County of Suffolk, 91 NY2d at 204). Moreover, the plaintiff also alleged that the Village defendants had separate and verifiable knowledge of the mother's behavioral history because, in March 2018, they had removed the mother from her home to Greenwich Hospital following a report from the child's maternal grandmother, the defendant Maria Solorzano, that the mother presented a danger to the child.

We also conclude that the third element of a special relationship was satisfied through allegations of direct and immediate contact between the Village police officers, CPS, ADAs Parab and Clark, and the plaintiff or the plaintiff's Family Court attorney (see id.). To the extent that the County defendants argue that the absence of direct communication between the plaintiff and CPS requires dismissal of the allegations insofar as asserted against CPS, that argument is unavailing. The Court of Appeals has emphasized "a flexible approach" in evaluating the third element of a special relationship when an order of protection is present (id.; see Kircher v City of Jamestown, 74 NY2d 251, 257-258). We conclude that the allegations are sufficient in that the plaintiff alleged direct communication with each municipality in the amended complaint and the individual government defendant agencies coordinated a response amongst themselves (see Mastroianni v County of Suffolk, 91 NY2d at 204; Cuffy v City of New York, 69 NY2d at 262-263; cf. Velez v City of New York, 730 F3d 128, 136 [2d Cir 2013] ["(I)n the abstract, . . . a municipality may acquire knowledge through any of its agents, and in some cases, the relevant knowledge may be acquired through a combination of agents, including nondefendants"]).

As to the fourth element of a special relationship, we similarly conclude that the amended complaint, as supplemented by the affidavits submitted by the plaintiff, stated sufficient factual allegations of the plaintiff's justifiable reliance on the government defendants' undertaking in enforcing the Family Court order (see Coleson v City of New York, 24 NY3d at 482; Tarnaras v County of Nassau, 264 AD2d 390, 391). The plaintiff alleged that he relied upon both the Village [*3]defendants and the County defendants to enforce the Family Court order to the extent permissible under the law. Significantly, the plaintiff alleged that he took the Family Court order directly to the Village police station, where he discussed with certain of the Village defendants the mother's "violent tendencies," that she was "mentally unstable," and that he believed that the child "was in danger as long as she remained" in the mother's residence. The plaintiff then traveled with Village police officers to the mother's residence and observed them serve the mother with the Family Court order. He also observed the Village police officers conferring with the District Attorney's Office about next steps in the investigation, after which the plaintiff spoke directly to an ADA regarding enforcement of the Family Court order. It is further alleged that later on the same evening, the Village Police Department conferred with, and gave a copy of the Family Court order to, CPS.

Therefore, in contrast to Howell v City of New York (39 NY3d at 1009), the plaintiff in this case did not rely on the "mere existence of an order of protection, standing alone" to state the element of justifiable reliance. Rather, the plaintiff set forth a concerted course of conduct by the government defendants, centered around the Family Court order, which preceded the child's death by well under 24 hours (cf. id. [emphasizing that plaintiff "had no contact with the police on the day of the incident prior to the attack" and "the police were not on the scene or in a position provide assistance if necessary"]; Valdez v City of New York, 18 NY3d 69, 81 [concluding that "(i)t was not reasonable for (the plaintiff) to conclude, based on nothing more than the officer's statement that the police were going to arrest Perez 'immediately,' that she could relax her vigilance indefinitely," where the assault on the plaintiff did not occur until approximately 28 hours after the officer's statement]; Axt v Hyde Park Police Dept., 162 AD3d 728, 729-730). Moreover, viewing the allegations in the light most favorable to the plaintiff, it may be inferred that the plaintiff did not seek other means to enforce the Family Court order as a result of his reliance on the government defendants, for example, by reaching out to another law enforcement agency or by resorting to self help (see Sorichetti v City of New York, 65 NY2d 461, 470-471). In other words, the government defendants' conduct induced the plaintiff to "relax his own vigilance or to forego other available avenues of protection" (Cuffy v City of New York, 69 NY2d at 261; see Coleson v City of New York, 24 NY3d at 483). Specific to this point, according to the plaintiff, a member of the Village Police Department warned the plaintiff that if he attempted to remove the child from the mother's residence, on his own, he would be arrested (cf. Ferreira v City of Binghamton, 38 NY3d at 315 [discussing that the distinction between "misfeasance and nonfeasance . . . is irrelevant to the special duty analysis" (internal quotation marks omitted)]).

The case of Sorichetti v City of New York (65 NY2d at 464-467) is instructive. In that case, both the Appellate Division, First Department, and the Court of Appeals affirmed the denial of a pretrial motion by the City of New York to dismiss the complaint for failure to state a cause of action (see id. at 463-464). The case involved a violent assault committed by Frank Sorichetti against his six-year-old daughter, Dina, which occurred during his parental access with her (see id. at 465-467). In the roughly day-and-a-half period before the assault, Dina's mother, Josephine, repeatedly demanded that police officers retrieve Dina and arrest Sorichetti for threatening her and Dina in violation of an order of protection in Josephine's favor (see id.). Although members of the police force were aware of Sorichetti's violent history, Josephine was instructed that because Sorichetti had not physically hurt anyone, "there was nothing the police could do" (id. at 466). The Court of Appeals held that "a special relationship existed between the police and Josephine and her six-year-old daughter such that the jury could properly consider whether the police conduct satisfied the duty of care owing to Dina" (id. at 471).

Similarly, in Mastroianni, the Court of Appeals determined that all of the elements of a special relationship were present such that the "the reasonableness of the actions of the municipality's police department" should be considered by the trier of fact (Mastroianni v County of Suffolk, 91 NY2d at 205). In that case, the plaintiff's decedent was killed by her husband a few hours after the decedent reported to the police that her husband had violated an order of protection in her favor "by entering her residence and throwing her furniture out into the yard" (id. at 201). Police officers accompanied the decedent to her residence and also spoke to her husband, who purportedly had been visiting "next door neighbors" (id.). The police officers were advised by their supervisor that they could not arrest the husband based solely on the decedent's "say so" but remained on the scene while she moved her furniture back into her house (id. at 202 [internal quotation marks omitted]). Notably, the responding police officers had informed the decedent that "they could not presently make an arrest" but "would do whatever [they] could" (id. at 205 [internal [*4]quotation marks omitted]).

Accordingly, the amended complaint sufficiently stated the existence of a special relationship between the plaintiff and the government defendants. Therefore, the Supreme Court erred in granting the government defendants' separate motions pursuant to CPLR 3211(a)(7) to dismiss the amended complaint insofar as asserted against each of them.

We also conclude that the Supreme Court should not have granted the government defendants' motions based on governmental function immunity.

B. The Government Defendants Failed to Conclusively Establish that Their Actions Were Shielded from Liability by Governmental Function Immunity or Absolute Immunity

Governmental function immunity, sometimes referred to as the professional judgment rule, is a defense that "shields public entities from liability for discretionary acts taken during the performance of governmental functions even when the conduct is negligent" (Walker-Rodriguez v City of New York, 231 AD3d at 1092 [alteration, citation, and internal quotation marks omitted]; see Johnson v City of New York, 15 NY3d 676, 680-681). "Discretionary or quasi-judicial acts involve the exercise of reasoned judgment which could typically produce different acceptable results, whereas a ministerial act envisions direct adherence to a governing rule or standard with a compulsory result" (P.D. v County of Suffolk, 231 AD3d at 6 [internal quotation marks omitted]; see Tango v Tulevech, 61 NY2d 34, 40-41). "[A] municipality is not immune from liability based upon the exercise of discretionary authority unless the municipal defendant establishes that the discretion possessed by its employees was in fact exercised in relation to the conduct on which liability is predicated" (P.D. v County of Suffolk, 231 AD3d at 6 [internal quotation marks omitted]). "Moreover, such immunity . . . presupposes that judgment and discretion are exercised in compliance with the municipality's procedures, because the very basis for the value judgment supporting immunity and denying individual recovery becomes irrelevant where the municipality violates its own internal rules and policies, and exercises no judgment or discretion" (Walker-Rodriguez v City of New York, 231 AD3d at 1092 [alteration and internal quotation marks omitted]; see Devlin v City of New York, 193 AD3d 819, 821; Owens v City of New York, 183 AD3d 903, 906-907; Ferreira v City of Binghamton, 975 F3d 255, 270 [2d Cir]).

Generally, the "decision to arrest an individual involves the exercise of discretion . . . and thus is cloaked with governmental immunity" (Keselman v City of New York, 95 AD3d 1278, 1279-1280 [internal quotation marks omitted]). However, here, in the face of what was, in effect, a temporary order of protection, the defendant police officers became, at a minimum, "obligated to respond and investigate" (Sorichetti v City of New York, 65 NY2d at 470). Therefore, the Village defendants have not conclusively established that their actions were purely discretionary (see id. at 469-470).

Criminal Procedure Law § 140.10(4)(b)(i) also directs that a police officer "shall arrest" a person upon reasonable cause to believe that the person violated the "stay away" provision of an order of protection (see Howell v City of New York, 39 NY3d at 1025 [Wilson, Ch. J. dissenting] [discussing the legislative history behind the Domestic Violence Intervention Act and, with respect to CPL 140.10(4) specifically, that "it could not be clearer that the legislature believed it extraordinarily important that perpetrators of domestic violence who violated orders of protection would be arrested—without exception"]). Similarly, the Family Court Act provides, in pertinent part, that the:

"presentation of a copy of an order of protection or temporary order of protection . . . to any . . . police officer shall constitute authority for him [or her] to arrest a person charged with violating the terms of such order of protection or temporary order of protection and bring such person before the court and, otherwise, so far as lies within his [or her] power, to aid in securing the protection such order was intended to afford" (Family Ct Act § 168[1]).

In light of these statutory mandates, the existence of the Family Court order, and the circumstances as alleged in the amended complaint, the Village defendants failed to conclusively establish that they were entitled to governmental function immunity, such that it can be said that the plaintiff has no cause of action and no significant dispute exists regarding it (see Adams v Suffolk County, 234 AD3d at 17; P.D. v County of Suffolk, 231 AD3d at 10; cf. Devlin v City of New York, [*5]193 AD3d at 821-822 [concluding that the officers' actions were discretionary in that neither CPL 140.10(4)(c) nor the patrol guide compelled an arrest under the circumstances]).

The Supreme Court, by focusing its analysis on the legality of a hypothetical warrantless entry into the mother's home,FN2 overlooked a "reasonableness review" of the Village defendants' investigation as a whole (Sorichetti v City of New York, 65 NY2d at 470 [internal quotation marks omitted]; see Adams v Suffolk County, 234 AD3d at 17). Such an inquiry may include whether the Village defendants should have lawfully arrested the mother at the entrance to her home (see generally People v Garvin, 30 NY3d 174, 180-182), timely applied for an arrest warrant (see Penal Law § 120.10 et seq.), or taken additional reasonable law enforcement actions. Under the circumstances, the Village defendants failed to conclusively establish that their response to, and investigation of, the plaintiff's amended complaint were entitled to governmental function immunity (see Adams v Suffolk County, 234 AD3d at 17; P.D. v County of Suffolk, 231 AD3d at 10).

We similarly conclude that the County defendants failed to conclusively establish that their actions were purely discretionary as opposed to ministerial in nature or that any discretion was in fact exercised in relation to the conduct on which liability is predicated (see Haddock v City of New York, 75 NY2d 478, 485; P.D. v County of Suffolk, 231 AD3d at 10; Santaiti v Town of Ramapo, 162 AD3d 921, 929; Trimble v City of Albany, 144 AD3d 1484, 1488). Contrary to the contentions of the County defendants, the conduct alleged in the amended complaint regarding the named employees of the District Attorney's Office did not relate to their duties in initiating and pursuing a criminal prosecution and, therefore, was not subject to absolute immunity (see Sculti v Finley, 167 AD3d 796, 797; Blake v City of New York, 148 AD3d 1101, 1104; see also Buckley v Fitzsimmons, 509 US 259, 271 ["(P)rosecutors are not entitled to absolute immunity for their actions in giving legal advice to the police"]; Burns v Reed, 500 US 478, 495-496).

Accordingly, the Supreme Court should not have granted the government defendants' separate motions to dismiss the amended complaint insofar as asserted against each of them based on governmental function immunity.

Nonetheless, the Village defendants are correct that the plaintiff's nineteenth, twentieth, and twenty-first causes of action, in effect, alleging negligent hiring, retention, supervision, or training insofar as asserted against them, should be dismissed. Where, as here, "an employee is acting within the scope of his or her employment, the employer is liable for the employee's negligence under a theory of respondeat superior and no claim may proceed against the employer for negligent hiring, retention, supervision or training" (S.W. v Catskill Regional Med. Ctr., 211 AD3d 890, 891 [internal quotation marks omitted]).

III. The Plaintiff Should Have Been Permitted Leave to Serve a Late Notice of Claim and Serve and File a Proposed Second Amended Complaint

"[P]ursuant to General Municipal Law § 50-e(5), a court has the discretion to permit the service of a late notice of claim" (Matter of Cooke v Mamaroneck Union Free Sch. Dist., 238 AD3d 1034, 1035 [internal quotation marks omitted]).

"In determining whether to grant a petition for leave to serve a late notice of claim . . . , the court must consider all relevant circumstances, including whether (1) the public corporation acquired actual knowledge of the essential facts constituting the claim within 90 days after the claim arose or a reasonable time thereafter, (2) the claimant demonstrated a reasonable excuse for the failure to serve a timely notice of claim, and (3) the delay would substantially prejudice the public corporation in its defense on the merits" (id. [internal quotation marks omitted]; see Doe v City of New York, 185 AD3d 659, 661).

"While no single factor is necessarily determinative, whether the public corporation timely acquired actual knowledge is of great importance" (Matter of Cooke v Mamaroneck Union Free Sch. Dist., 238 AD3d at 1035 [alteration and internal quotation marks omitted]). "In order for a municipality to have actual knowledge of the essential facts constituting the claim, it must have knowledge of the facts that underlie the legal theory or theories on which liability is predicated in the notice of claim" (Lobos v City of New York, 219 AD3d 720, 721 [alteration and internal quotation marks omitted]). "[C]ourts should not assume that every municipal employee's knowledge of essential facts is necessarily imputed to the municipality" (Matter of Jaime v City of New York, 41 NY3d 531, 540; see Parker v City of New York, 206 AD3d 936, 938). However, "[g]enerally, knowledge of essential facts as to time and place by an actor in a position to investigate will suffice" (Matter of Jaime v City of New York, 41 NY3d at 540).

The plaintiff, herein, established that the District Attorney's Office acquired actual knowledge of the essential facts constituting the claim approximately one week after the claim arose. Moreover, it is not in dispute that the essential facts of the claim were the subject of an immediate criminal investigation which culminated in the mother's criminal conviction for murder in the second degree. Under these circumstances, including that the District Attorney's Office was responsible for prosecuting the criminal case against the mother, we conclude that the County defendants had timely acquired actual, or imputed, knowledge of the necessary facts contained in the late notice of claim. For the same reason, the plaintiff satisfied his "initial burden of establishing a lack of substantial prejudice" with respect to his late notice of claim (Doe v City of New York, 185 AD3d at 661). In opposition, the government defendants failed to make any particularized evidentiary showing that they would be substantially prejudiced by the late notice of claim (see id.).

Under the circumstances, the Supreme Court improvidently exercised its discretion in denying that branch of the plaintiff's motion which was for leave to serve a late notice of claim.

We also hold that the Supreme Court should have granted that branch of the plaintiff's motion which was for leave to serve and file a proposed second amended complaint, which, as the parties apparently agree, does not make any substantive changes to the amended complaint (see CPLR 3025[b]).

IV. Conclusion

The parties' remaining contentions either are without merit or have been rendered academic in light of the foregoing.

Accordingly, the amended order is modified, on the law, (1) by deleting the provision thereof granting the motion of the defendants County of Westchester, Child Protective Services, Anthony A. Scarpino, Jr., Amit Parab, individually and as Assistant District Attorney of the County of Westchester, and Mary Clark, individually and as Assistant District Attorney of the County of Westchester, pursuant to CPLR 3211(a) to dismiss the amended complaint insofar as asserted against them, and substituting therefor a provision denying those defendants' motion, and (2) by deleting the provision thereof granting those branches of the motion of the defendants Village of Mamaroneck, Village of Mamaroneck Police Department, Christopher Leahy, individually and as Chief of Police of the Village of Mamaroneck, Anthony Colletti, individually and as a police officer of the Village of Mamaroneck, Gary Galvao, individually and as a police officer of the Village of Mamaroneck, and Michael Bonacci, individually and as a police officer of the Village of Mamaroneck, which were pursuant to CPLR 3211(a) to dismiss the first through eighteenth and twenty-second through fifty-first causes of action of the amended complaint insofar as asserted against them, and substituting therefor a provision denying those branches of those defendants' motion; as so modified, the amended order is affirmed insofar as appealed from.

The order dated June 7, 2021, is reversed, on the law and as a matter of discretion, those branches of the plaintiff's motion which were for leave to serve and file a proposed second amended complaint and for leave to serve a late notice of claim are granted, and that branch of the plaintiff's motion which was for leave to amend the notice of claim is denied as academic.

WOOTEN, J.P., WAN, and MCCORMACK, JJ., concur.

ORDERED that the amended order is modified, on the law, (1) by deleting the provision thereof granting the motion of the defendants County of Westchester, Child Protective Services, Anthony A. Scarpino, Jr., Amit Parab, individually and as Assistant District Attorney of the County of Westchester, and Mary Clark, individually and as Assistant District Attorney of the County of Westchester, pursuant to CPLR 3211(a) to dismiss the amended complaint insofar as asserted against them, and substituting therefor a provision denying those defendants' motion, and [*6](2) by deleting the provisions thereof granting those branches of the motion of the defendants Village of Mamaroneck, Village of Mamaroneck Police Department, Christopher Leahy, individually and as Chief of Police of the Village of Mamaroneck, Anthony Colletti, individually and as a police officer of the Village of Mamaroneck, Gary Galvao, individually and as a police officer of the Village of Mamaroneck, and Michael Bonacci, individually and as a police officer of the Village of Mamaroneck, which were pursuant to CPLR 3211(a) to dismiss the first through eighteenth and twenty-second through fifty-first causes of action of the amended complaint insofar as asserted against them, and substituting therefor a provision denying those branches of those defendants' motion; as so modified, the amended order is affirmed insofar as appealed from; and it is further,

ORDERED the order dated June 7, 2021, is reversed, on the law and as a matter of discretion, those branches of the plaintiff's motion which were for leave to serve and file a proposed second amended complaint and for leave to serve a late notice of claim are granted, and that branch of the plaintiff's motion which was for leave to amend the notice of claim is denied as academic; and it is further,

ORDERED that one bill of costs is awarded to the plaintiff.

ENTER:

Darrell M. Joseph

Clerk of the Court

Footnotes

Footnote 1: On this appeal, the plaintiff does not argue that either of the two other recognized situations giving rise to a special duty apply (see generallyFerreira v City of Binghamton, 38 NY3d at 310).

Footnote 2: Although we conclude that the Supreme Court's legal conclusion that, ordinarily, a law enforcement decision to effectuate a warrantless entry into a home is a discretionary act was correct (see generallyPeople v Rodriguez, 77 AD3d 280, 283-289), here, the Village defendants did not demonstrate that such discretion was in fact exercised in this case (seeP.D. v County of Suffolk, 231 AD3d at 10).